UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>        Plaintiff,<br><br>vs.<br><br>SIMPLE HEALTH PLANS LLC, a Florida limited liability company, et al.,<br><br>        Defendants. | **Case No.: 18-cv-62593-DPG** |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL PLAINTIFF FEDERAL TRADE COMMISSION TO
PRODUCE COURT-ORDERED DISCOVERY SUBJECT TO A LIMITED
PROTECTIVE ORDER AND TO EXTEND MR. DORFMAN'S DEADLINE
TO OPPOSE THE ENTRY OF A PRELIMINARY INJUNCTION**

## I.  Introduction

Weeks after ignoring repeated requests by the FTC to negotiate a protective order that would facilitate a *voluntary* production of *non-privileged* material, Defendant Steven Dorfman suddenly claims that his lack of access to this material justifies indefinitely delaying the preliminary injunction briefing and hearing scheduled in this matter, which the Court already has extended twice.  Requests for extensions of time require "good cause," and continuances of hearings are only granted under "exceptional circumstances."  *See* Local Rules 7.1(J) and 7.6.  Defendant has not satisfied either of these standards here.

The circumstances make clear, in fact, that Defendant's true motive is delay.  Indeed, in the same way that he delayed responding to the FTC's proposed protective order, Defendant waited nearly an entire month before requesting materials from the Temporary Receiver.  In addition, rather than going to the business premises himself to obtain materials purportedly

1

necessary to his defense, as the Receiver offered him the opportunity to do, Defendant instead chose to serve the Temporary Receiver with an overbroad document request, thereby causing a further delay himself.  The lack of diligence and good faith reflected in Defendant's actual efforts to obtain information from the FTC and Receiver since the filing of this case flatly contradicts the contrived outrage in his motion. (Dkt. 50, "Motion.")

Defendant's Motion grossly mischaracterizes the Order that he seeks to enforce and the lengths that the FTC has gone to respond to his concerns.  On November 19, 2018, the Court entered an Order noting that the FTC had agreed "to voluntarily produce" three limited categories of "nonprivileged" material in its files. (Dkt. 29).  That same day, counsel for Defendant inquired when the FTC would turn over these materials.  Hours later, the FTC responded, informing Defendant that the material contained sensitive consumer information as well as material protected by the law enforcement privilege so that a limited protective order would be needed to facilitate production of unredacted versions of these documents.  Requiring such a protective order is standard practice for the FTC before it will produce sensitive consumer information.  After the FTC provided Defendant with a proposed protective order, however, Defendant initially did not respond for weeks.  Only after being directly asked by the FTC for a counter proposal did Defendant finally provide one the day before filing this Motion, nearly one month after the FTC circulated its proposed protective order and two weeks after the Court encouraged the parties at the December 6 hearing to engage in a "dialogue" regarding this issue.

The delay that Defendant complains about is therefore wholly of his own creation and cannot now be used as an excuse to further postpone the preliminary injunction hearing to the prejudice of the FTC as well as his tens of thousands of consumer victims who continue to pay each month for Defendants' misrepresented plans.  The FTC has been prepared for weeks to turn

over the materials that Defendant claims he needs, subject to a protective order, a position the FTC clearly articulated before the Court at a hearing on December 6, 2018. Even after finally responding to and rejecting the FTC's protective order, claiming Defendant Dorfman himself must have access to the FTC's privileged undercover identities, counsel still has been unable to offer a convincing rationale as to why Dorfman himself needs this information, which is not subject to the FTC's voluntary production agreement. The argument that the protective order somehow inhibits counsels' ability to communicate freely with their client and prepare a defense is specious, given the extremely narrow scope of the information that would be subject to the attorneys' eyes only provision in the proposed order.

For these and the following reasons, the FTC asks that the Court deny the motion to compel and the requested extension of the preliminary injunction schedule, although the FTC would not object to a short, five-day extension of the briefing schedule to allow Defendant additional time to prepare his response. The FTC also requests by separate motion that the Court enter its proposed protective order, so that the FTC is able to proceed with producing the materials it has been prepared to turn over for weeks.

**II.     Defendant Himself Has Caused the Delay in Obtaining Materials**

On November 19, 2018, the Court entered an agreed order granting expedited discovery (Dkt. 29, "Discovery Order"). The Discovery Order memorialized the FTC's agreement to voluntarily produce a specific group of "nonprivileged material" in its files to Defendant, including 1) documents related to consumer declarants; 2) audio files and other documents

related to the FTC's three undercover transactions, and 3) to the extent they exist, material indicating Defendant did not make the misrepresentations alleged in the FTC's complaint.[1]

After entry of the Discovery Order, the FTC attempted on multiple occasions to work with opposing counsel to facilitate a timely production, with no success.  The FTC's responsiveness to this matter, along with Defendant's corresponding indifference to it, are demonstrated by the following timeline:

- **November 19, 2018** – Discovery Order entered and Defendant's counsel requests production from FTC. *See* Emails between FTC staff and Defendant's counsel, **Exhibit A** at 4.

- **November 19, 2018** – FTC informs Defendant about need to protect sensitive consumer information and undercover identities, proposes redacting undercover information or using an attorney's eyes only provision in a protective order, asks for counsel's thoughts, anticipates being able to produce the other requested documents by no later than Dec. 7.  *See* **Exhibit A** at 3.

- **November 20, 2018** – Defendant's counsel asks for clarification, states concern about his client's due process rights and his ability to defend himself, raises Defendant's right to compel evidence from third-parties relating to the undercover identities.  *See* **Exhibit A** at 2-3.

- **November 20, 2018** – FTC explains its legitimate law enforcement interest in maintaining the confidentiality of the undercover identities, tells counsel that we are preparing draft protective order for his review that will safeguard the privileged information but also allow third party discovery to address Defendant's concern.  *See* **Exhibit A** at 1-2.

- **November 21, 2018** – FTC provides Defendant with a draft protective order under which the FTC would provide all requested information to Defendant, but would generally protect consumer personally identifiable or other sensitive information, and would restrict access to the FTC's privileged undercover identities to "Attorneys' Eyes Only."  FTC tells counsel that we need the protective order in place before producing the consumer material. *See* **Exhibit A** at 1; FTC draft protective order, **Exhibit B**.

---

[1] The FTC promptly notified Defendant that it does not possess any information falling into this third category.

- **November 21 – December 6, 2018 -** No response from Defendant for over two weeks about proposed protective order.

- **December 6, 2018** – During hearing on another issue, Defendant's counsel complains to Court that he has not received material from FTC. FTC explains the reason the FTC has not produced anything, the lack of response from counsel to our proposed protective order, and the importance of maintaining confidentiality of the undercover identities. *See* Transcript of December 6, 2018 Hearing, **Exhibit C** at 14-21.

- **December 6-12, 2018** – No response from Defendant about proposed protective order.

- **December 12, 2018** – Defendant asks FTC about the status of the FTC's production and objects to "any restriction on my ability to communicate openly with my client" or to use the information to obtain third party discovery. Defendant fails to offer counter-proposal to FTC's proposed protective order. *See* Emails between FTC Staff and Defendant's counsel, **Exhibit D** at 2.

- **December 12, 2018** – FTC again reiterates that it cannot produce the requested material without a protective order in place, that the standard FTC practice is not to produce consumer's personally identifiable information without a protective order, why the undercover identities are subject to law enforcement privilege, why FTC's proposed protective order addresses Defendant's concern about third party discovery, and asking Defendant to explain "the compelling need" for Defendant himself to know the undercover identities. *See* **Exhibit D** at 1.

- **December 12-18, 2018** – No response from Defendant about proposed protective order.

- **December 18, 2018 –** Defendant's counsel finally provides FTC with a redline of the proposed protective order adding Defendant Dorfman as a recipient of the "Attorneys' Eyes Only" undercover identities.

- **December 19, 2018 –** FTC declines to add Dorfman, who is not an attorney, to the Attorneys' Eyes Only" provision. Defendant files instant Motion.

The FTC has no interest in withholding these materials from Defendant; to the contrary, as Defendant stated in his Motion, we *voluntarily agreed to produce them to Defendant*. After receiving Defendant's request pursuant to the Discovery Order, FTC staff promptly began to gather and prepare the materials for production, and immediately raised the need for a protective order to protect consumer information and undercover identities. After Defendant expressed

5

concern about a protective order's limitations on his ability to use the undercover identities for third party discovery, FTC staff prepared and circulated a draft protective order the next day that specifically addressed Defendant's concern.  The draft protective order created an "Attorneys' Eyes Only" provision that would apply only to the undercover identities so that Defendant's counsel could use the information to seek discovery while still protecting the confidential and privileged identities from wider dissemination.

As detailed in the above chronology and corresponding attachments, Defendant's claim that his counsel "made numerous attempts" to obtain the materials is simply untrue.  Defendant did not respond for weeks, and then even after complaining in court on December 6, failed to subsequently engage with the FTC in any meaningful way on the issue.  During the hearing, the Court even questioned, "[H]ave the two of you had any dialogue about the proposed order or did you just submit it and did not receive a response?"  **Exhibit C** at 20.  FTC staff did not receive a redline with proposed edits to the FTC's proposed protective order until December 18, almost one month after FTC staff first provided it to Defendant, and then the next day, Defendant proceeded to file his Motion.  Defendant should not be able to use the delay he created to further postpone the preliminary injunction hearing.

## III. The Undercover Identities are Subject to the Law Enforcement Privilege

The FTC's undercover identities fall comfortably within the law enforcement privilege, and Defendant has not provided any evidence of a compelling need to justify lifting the privilege. The purpose of the law enforcement privilege is "to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *In re Dep't of Investigation of the City*

6

*of N.Y.*, 856 F.2d 481, 484 (2d Cir.1988); s*ee also In re the City of New York*, 607 F.3d 923, 941 (2d Cir. 2010).  An investigation does not need to be ongoing for the law enforcement privilege to apply, as "the ability of a law enforcement agency to conduct future investigations may be seriously impaired if certain information" is revealed to the public.  *In re the City of New York*, 607 F.3d at 944 (citations omitted).

Here, the disclosure of the undercover identities used by FTC investigators in non-public investigations would both disclose law enforcement techniques and procedures and seriously interfere with ongoing and future investigations.  *See* **Exhibit E** at 2-3**.**  The FTC has a limited number of undercover identities for use in its investigations.  *See id.*  Each is associated with a unique bank account, credit card account, and mailing address, all of which require significant agency time and resources to acquire.  *See id.*  The FTC has maintained the confidentiality of these identities in multiple prior investigations cases because public disclosure that these identities are actually undercover would prevent the FTC from using the identities in future investigations, which would require the agency to spend more time and resources to develop new undercover identities.  *See id.*  It is crucial for law enforcement investigations to be confidential until the enforcement agency chooses to divulge the existence of its investigation.  *See id.* Disclosure of the FTC's undercover identities creates the risk that a target of a future FTC investigation could learn of the FTC's non-public investigation simply by seeing a purchase made under the name of a known FTC undercover identity.  *See id.*  If the target of an investigation learns of the investigation at an inopportune time, the target could destroy documents, hide or dissipate assets, intimidate witnesses, convince witnesses not to provide information, or interfere with the investigation in a myriad of other ways.  *See id.*  For these reasons, disclosure of the FTC's undercover identities would seriously impair the agency's

ability to conduct ongoing and future investigations as well as impermissibly reveal law enforcement techniques and procedures.  *See id.*  At least one of the undercover identities Defendant seeks is being used in another ongoing non-public FTC investigation, and disclosure of this identity would compromise and disrupt this investigation.  *See* **Exhibit F** at 2.  Additionally, disclosure would prevent the FTC from ever using this undercover identity in the future.  *See id.*; **Exhibit E** at 2.

Once the party asserting the privilege has shown that the information at issue is something that the law enforcement privilege is intended to protect, there is a "strong presumption against lifting the privilege." *In re: City of New* York, 607 F.3d at 945 (*citing Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122, 1125 (7th Cir.1997)).  "To rebut that presumption, the party seeking disclosure must show (1) that its suit is 'non-frivolous and brought in good faith,' (2) that 'the information sought is [not] available through other discovery or from other sources,' and (3) that the information sought is 'importan[t]' to the party's case." *In re: City of New York*, 607 F. 3d at 945 (citing *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1343 (D.C.Cir.1984)).  Information is sufficiently important only if the party seeking its disclosure demonstrates a "compelling need." *In re: City of New York*, 607 F.3d at 945; *Cf. Marriott Int'l Resorts, L.P. v. United States*, 437 F.3d 1302, 1307 (Fed.Cir.2006) (emphasis added).

Defendant has not identified any legitimate need for *Dorfman himself* to know the undercover identities used by FTC investigators in contacting his companies, let alone a compelling need.  Defendant's counsel informed the FTC that he simply would not agree to anything placing any restriction on his ability to "communicate openly" with his client.  But when pressed about why and how using, for example, initials, to identify the undercover

8

identities when communicating with his client, would impact their discussion of the substance of the transaction in any way, counsel is unwilling or unable to provide any explanation.

In his Motion, the only statement Defendant offers to support his need for the undercover identities is that for Defendant and his counsel "to be able to communicate and prepare his defense in this case," Defendant must know the undercover identities "so that he can search for and review corporate records relating to the undercover investigations, including recordings of phone calls, CRM records, invoices, verifications, and other corporate records." (Dkt. 50 at 4-5). This stated "need" is disingenuous. First, Defendant already has the complete transcripts of all of the recordings of the undercover phone calls, including the verifications. Second, the *only* information that the FTC seeks to protect is the three undercover identities used[2], and even this information the FTC has offered to produce to Defendant's counsel under an "Attorneys' Eyes Only" provision. Once an appropriate protective order is in place, all other information related to the undercover transactions would be turned over to Defendant with no restrictions. From this information, Defendant would be able to see all the details related to the undercover transaction, including every interaction Defendant's agents had with the FTC investigator, by email or phone, all of the information exchanged between them, including any policy information, and every dollar charged and refunded. It is not clear what else Defendant would need to be "searching for" using the undercover identities, nor why this search could not be performed by counsel or a paralegal at the direction of Defendant. If there somehow is a defense to be made related to these undercover transactions, Defendant surely can formulate the defense without having to compromise the FTC's legitimate need to safeguard its undercover identities and protect its

---

[2] The protection of the undercover identities includes the addresses, phone numbers, emails, bank account and credit card account information created in connection with the identity.

ongoing investigations. Defendant has not provided evidence to support rebutting the strong presumption against lifting the law enforcement privilege.

**IV.     An Extension of the TRO is Unwarranted and Would Prejudice the FTC**

      **a. Defendant has failed to establish "good cause" or "exceptional circumstances" to justify Defendant's request to delay the preliminary injunction briefing and hearing.**

Defendant claims that he needs a substantial and indeterminate extension of time to oppose the entry of a preliminary injunction because he has not received a limited set of information from the FTC, but his conduct since the filing of this case establishes that he is not entitled to such relief. As described above, Defendant showed little or no interest in obtaining this information for weeks after entry of the Temporary Restraining Order ("TRO"), despite provisions in the order providing for his access to both the information as well as the Defendants' business premises. Defendant also did not request a single piece of information from the Temporary Receiver for four weeks after the TRO was entered, and even then, he declined the Receiver's offer to provide Defendant access to the business premises so he could obtain the information himself. Now that the deadline for Defendant's opposition to the preliminary injunction is approaching, however, Defendant claims a sudden need to obtain an extremely limited set of information from the FTC, and claims the lack of this information justifies a substantial delay. Defendant has had more than enough time to prepare his defense—his opposition is due on January 4, 2019, nine weeks after the case was filed, and the hearing is set for January 29, 2019, three months after this case was filed. Defendant's Motion is nothing more than an effort to delay.

Defendant's fixation on obtaining information about the FTC's three undercover identities is telling. While the FTC's undercover transactions certainly are compelling evidence

of Defendants' fraud, these deceptive sales are only *three* recorded transactions out of hundreds of thousands, if not millions, of recordings of Defendant's deceptive sales calls currently stored on numerous servers under Defendants' control, as will be described in more detail in the FTC's forthcoming supplemental filing in support of the preliminary injunction.  Defendant's sales followed the facially deceptive scripts found on Defendant's computer and on almost every telemarketing terminal on site, scripts with misrepresentations as bad as, and often worse than, those described in the FTC's initial filing in support of the TRO.  (Dkt. 12).  In addition to sales calls, Defendant recorded and saved scores of "customer service" and "save" calls where consumers, many with serious health conditions, continued to be deceived when they subsequently called Defendants to inquire about or confirm their health insurance coverage.[3]  This case will not turn on the undercover identities associated with just three transactions out of the hundreds of thousands, if not millions, associated with Defendant's scheme.  Defendant, who has been intricately involved in running his companies for years, cannot credibly argue that he has not been able to prepare his defense since the case was filed because of the FTC's insistence on the appropriate protections for a limited scope of sensitive and highly confidential information.  This is especially true given that the majority of the information sought and that the FTC will produce has already been provided in a redacted form in the FTC's initial exhibits in support of its Motion for a TRO.

      **b. Extending the preliminary injunction hearing would be burdensome and prejudicial to the FTC.**

The hearing for the preliminary injunction in this matter already has been extended two times.  First, the FTC agreed to an extension of the hearing to December 6 to allow Defendant

---

[3] Defendants consistently claimed to regulators, law enforcement, and business partners that these recorded sales and customer service calls did not exist.

time to prepare. Next, when Defendant requested another extension of time on November 15, the FTC agreed again to extend the hearing until the end of January – giving Defendant two and a half months of additional time. FTC staff relied on this agreement and the dates set by the Court in proceeding with their preparations for the hearing. Indeed, we already have arranged for our expert and consumer witnesses from throughout the country to come to Miami to testify at the January 29 hearing. The expert, and potentially other witnesses, may not be available if the hearing date is extended a third time.

The FTC's expert witness, Dr. Brian Miller, is a board-certified physician completing an internal medicine residency in Washington, D.C. Dr. Miller's schedule is extremely demanding and is set months in advance. He underwent significant effort to rearrange his appointments and ask other physicians to fill in for him to be available on January 29. Dr. Miller is completely unavailable in the months of February and March due to his work schedule, which includes a month-long rotation in the intensive care unit. The FTC would be prejudiced if it could not present its expert witness at the preliminary injunction hearing, and for reasons described below, moving the hearing by an additional two months to accommodate Dr. Miller's schedule would be untenable given the additional harm such a delay would cause to consumer victims.

In addition to Dr. Miller, the FTC intends to call consumer witnesses to testify at the preliminary injunction hearing. Relying on the January 29 date, consumer witnesses have taken time off work and rearranged their schedules to be available. We have arranged travel for consumer witnesses, some of whom live far from any major airports and will spend most of a day traveling to and from Miami.

### c. Extending the preliminary injunction hearing would harm consumers.

A further delay in the preliminary injunction briefing schedule and hearing date not only would prejudice the FTC, but would result in continuing consumer harm. According to Health Insurance Innovations, the third-party administrator for most of the products sold by Defendant, nearly 37,000 consumers subjected to Defendant's deceptive sales pitches are currently enrolled in limited benefit and discount plans, and the total billing for those consumers exceeds $6 million per month. *See* Dkt. 44-1 Exhibit 1 at 3. The ongoing billing of these consumer victims must be addressed as soon as possible so that consumers do not continue to be harmed. The preliminary injunction hearing should go forward as scheduled on January 29 so that this ongoing consumer harm can be stopped.

### V. Conclusion

For all of these reasons, the FTC opposes Defendant's motion to compel the FTC to produce sensitive consumer information and information protected by the law enforcement privilege, which the FTC does not waive. Concurrent with this opposition, the FTC is filling a motion for entry of its own proposed protective order. Once the FTC's proposed protective order is in place, the FTC stands ready to turn over the requested material to Defendant, as it has been for several weeks now.

The FTC also opposes Defendant's request to extend Defendant's deadline to oppose the entry of the preliminary injunction and the scheduled January 29 preliminary injunction hearing. At most, if the Court deems it appropriate, the FTC would have no objection to an extension of the deadlines for the parties' filings for five days to January 9, 2018 for Defendant's Opposition and January 23, 2018 for the FTC's reply, with the hearing date remaining on January 29, 2018 at 9:30 a.m. as set by the Court.

Dated:  December 21, 2018	Respectfully submitted,

                                             ALDEN F. ABBOTT
                                             General Counsel

                                             */s/ Elizabeth C. Scott*
                                             ELIZABETH C. SCOTT, Special Bar No. A5501502
                                             escott@ftc.gov; (312) 960-5609
                                             JAMES H. DAVIS, Special Bar No. A5502004
                                             jdavis@ftc.gov; (312) 960-5611
                                             JOANNIE WEI, Special Bar No. A5502492
                                             jwei@ftc.gov; (312) 960- 5607

                                             Federal Trade Commission
                                             230 S. Dearborn Street, Suite 3030
                                             Chicago, Illinois  60604
                                             Telephone:  (312) 960-5634
                                             Facsimile: (312) 960-5600

                                             Attorneys for Plaintiff
                                             FEDERAL TRADE COMMISSION

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on this December 21, 2018, by the Notice of Electronic Filing, and was electronically filed with the Court via the CM/ECF system, which generates a notice of filing to all counsel of record.

*/s/ Elizabeth C. Scott*
Elizabeth C. Scott (SBA # A5501502)