**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 18-cv-62593-DPG**

FEDERAL TRADE COMMISSION,

    Plaintiff,

vs.

SIMPLE HEALTH PLANS, LLC, et al.,

    Defendants.
_____/

**RECEIVER'S INTERIM STATUS REPORT CONCERNING THE FEDERAL TRADE COMMISSION'S PROPOSED CASE MANAGEMENT SCHEDULE AND DOCUMENT PRODUCTION TO DEFENDANT STEPHEN DORFMAN**

Michael I. Goldberg, as court-appointed temporary receiver (the "Receiver") over defendants Simple Health Plans LLC ("Simple Health"), Health Benefits One LLC, Health Center Management LLC, Innovative Customer Care LLC, Simple Insurance Leads LLC, Senior Benefits One LLC, and their subsidiaries, affiliates, successors and assigns (collectively, the "Receivership Entities"), by counsel, files his response in support of the Proposed Scheduling Order filed by the Federal Trade Commission ("FTC") so that this Court may enter a ruling on the FTC's request for a preliminary injunction having considered the Defendant's response. As discussed below, the Receiver believes that an unduly long continuance of the Preliminary Injunction Hearing (as defined below) prejudices the estate and hampers the Receiver's ability to properly administer the estate for the benefit of its creditors. Moreover, the Receiver does not believe that extension of the hearing date is warranted as the Defendant proposes given his continued delay in seeking relevant documents that the Receiver has made available from the

inception of this action. In light of the foregoing, the Receiver believes that it is incumbent on his office to provide this Interim Status Report to the Court.[1]

## BACKGROUND OF THE RECEIVERSHIP

1. On October 29, 2018, the FTC filed a Complaint in the United States District Court for the Southern District of Florida against the Receivership Entities and defendant Steven Dorfman ("Defendant") under Section 13(b) of the Federal Trade Commission Act (the "FTC Act"), 15 U.S.C. § 53(b) and the Telemarketing and Consumer Fraud and Abuse Act, 15 U.S.C. §§ 6101-6108, alleging the Defendant violated Section 5(a) of the FTC Act, 15 U.S.C. § 45(a) and the FTC's Telemarketing Sales Rule, 16 C.FR Part 310, as amended. [D.E. 1].

2. On the same date, the FTC filed an *Ex Parte* Motion for a Temporary Restraining Order with Asset Freeze, Appointment of a Temporary Receiver, and Other Equitable Relief, and Order to Show Cause Why a Preliminary Injunction Should Not Issue ("Motion for TRO"), along with a Memorandum in Support of the Motion for TRO. [D.E. 3].

3. On October 31, 2018, this Court entered an *Ex Parte* Temporary Restraining Order with Asset Freeze, Appointment of a Temporary Receiver, and Other Equitable Relief (the "TRO"), and Order to Show Cause Why a Preliminary Injunction Should Not Issue, which, among other things, appointed the Receiver over the Receivership Entities with full powers of an equity receiver. [D.E. 15]. A hearing on the issue of whether or not the Court should enter a preliminary injunction (the "Preliminary Injunction Hearing") was originally scheduled for November 4, 2018. *Id.*

---

[1] The Receiver has conducted his own investigation into the Receivership Entities' pre-receivership affairs and plans to file a comprehensive report prior to the hearing on the Order to Show Cause.

4. Thereafter, the parties filed, among other things, a First and Second Joint Motion seeking a continuance of the Preliminary Injunction Hearing and an extension of the TRO. [D.E. 17 & 27]. The Court entered an Order granting the Second Joint Motion to Continue on November 19, 2018. [D.E. 30]. As a result, the Preliminary Injunction Hearing was reset for January 29, 2019. *Id.* Critically, the Defendant was given up through and including January 4, 2019 to file a response to the FTC's Motion for TRO. *Id.* At the same time, the Receiver's temporary appointment was extended until such time as the Court issues its ruling on the Preliminary Injunction. *Id.*

5. The January 29, 2019 hearing was cancelled as a result of a U.S. government shutdown and the mandatory stay of the case that was sought by the FTC. [ECF Nos 58 & 59]. During that time, the Defendant sought emergency relief arguing that the previously agreed-upon continuance of the Preliminary Injunction Hearing, and concomitant extension of the TRO, violated his rights and that he needed key documents from the FTC in order to prepare an adequate response. [ECF No. 60].

6. This Court lifted the stay, deeming certain FTC employees as essential, so that the FTC could resolve the outstanding discovery issues raised by the Defendant. [ECF No. 64]. Since the beginning of the receivership, the Receiver and his staff have continued working to administer the receivership estate and provide documents to the Defendant – even during the period when the case was stayed.

### THE TEMPORARY STATUS OF THE RECEIVER'S APPOINTMENT PREJUDICES THE RECEIVERSHIP ESTATE AND CREDITORS

7. The Receivership Entities operated out of multiple offices in Miami, Hollywood, Dallas (3 offices) and overseas and primarily sold insurance products on behalf of a Health Insurance Innovations ("HII"). Immediately after the commencement of the receivership, HII

terminated its relationship with the Receivership Entities thereby effectively putting them out of business. If the Receiver was a permanent receiver, he would have immediately sought to have delivered possession of the leased premises to the landlords thereby limiting any claims they may have for unpaid rent.

8. In fact, the Receiver has been contacted by four landlords seeking to negotiate a return of the leased premises, however, the Receiver has not yet sought to terminate the leases and return the leased premises because the Defendant does not consent to the Receiver terminating the leases and because the role of a "temporary" receiver is to maintain the *status quo* pending the determination on the preliminary injunction. The Defendant's illogical refusal to consent to the termination of the leases is unnecessarily causing additional claims against the receivership estate causing further damage to creditors. If the Receiver were a permanent receiver, his role would change from one of preserving the *status quo* pending the outcome of the preliminary injunction hearing to the role of maximizing the distribution to creditors. This change in role would allow the Receiver to utilize his business judgment, with the Court's approval, to terminate the leases and return the leased property to the landlords thereby decreasing the amount of claims.[2]

9. The estate is already being impacted by the consequences of the Receiver's temporary appointment combined with the Defendant's refusal to consent to logical business decisions. On February 5, 2019, the Receiver received a Complaint seeking to evict Simple

---

[2] The Receiver notes that there is no legal prohibition to him seeking the Court's authorization to terminating the leases over the Defendant's consent. However, the Receiver has tried to operate the receivership during this "period of limbo" with an eye towards maintaining the *status quo*.

Health from the Doral, Florida location.[3]  Because the Defendant inexplicably withheld consent, the receivership estate will now needlessly incur legal fees as the Receiver is now tasked with addressing this eviction action, which could have been avoided with an orderly hand back of the premises at the time the landlord indicated that another party was interested in leasing the space.[4]

10. The Receivership Entities also lease a Lamborghini vehicle driven by the Defendant. The Receiver has secured the vehicle in accordance with the TRO. The leasing company repeatedly contacted the Receiver seeking the return of the vehicle. If the Receiver was a permanent receiver, he would have exercised his business judgment and immediately returned the depreciating vehicle. However, as temporary receiver charged with maintaining the status quo, the Receiver contacted the Defendant seeking his consent to surrender the vehicle. The Defendant never consented.

11. Given the Defendant's failure to consent, the Receiver filed his Motion for Authority to Cancel Vehicle Lease . . . [ECF No. 70], which is pending before the Court.  Among other things, cancellation and return of the leased vehicle will relieve the receivership estate of the carrying costs of the lease while at the same time releasing the Defendant from his personal guaranty for the car.  The Receiver does not understand why someone in Defendant's position would not consent to the return of such a luxurious asset under circumstances that would release him from his personal guaranty—especially in light of the fact that the Defendant has repeatedly expressed to the Court that this lawsuit has placed him in a precarious financial condition necessitating the estate to pay his living expenses and legal fees.

---

[3] This action violates the Court's orders preventing creditors from suing the Receivership Entities.

[4] In light of the delay, the Receiver has prepared a motion asking this Court to permit the Receiver to hand back the Doral, Florida and Dallas, Texas premises, which will be filed in the coming days.

12. The Receiver notes that TROs are typically 14 days in duration and a preliminary injunction hearing usually takes place within a few weeks of the entry of the TRO precisely so that the issues that have been described herein can be avoided.  The initial preliminary injunction hearing was reset two times at the Defendant's urging to January 29, 2019.  In reality, this also extended the temporary nature of the Receiver's appointment for more than three months after the commencement of the receivership. Any further extension beyond what the FTC is offering will be prejudicial to the receivership estate and its creditors.

13. Based on the extensive document requests the Defendant has made to the Receiver (discussed below), it is apparent to the Receiver that the Defendant is treating the preliminary injunction hearing as if it was the ultimate determination on the merits of the case.  It is not. The Defendant will have ample opportunity to fully litigate his case in the months to come.

14. The Receiver respectfully suggests that the Court not continue the hearing on the preliminary injunction beyond what the FTC suggests. Moreover, in light of the fact that the receivership entities are essentially out of business due to HII terminating its relationship, the Court should consider granting the extension only if the Defendant consents to the Receiver administering the receivership estate with the goal of maximizing the recovery to creditors rather than preserving the *status quo*.

### THE DEFENDANT'S DOCUMENT REQUESTS FOLLOWING THE RECEIVER TAKING CONTROL OF THE BUSINESS

15. Any claim by the Defendant that the Receiver's delay in responding to his document request necessitates a further continuance of the Preliminary Injunction Hearing is spurious. Any delay in the Defendant obtaining the documents he believes are necessary for his defense were caused by the Defendant's own inaction.  More specifically, on November 1, 2018,

47800128;1

pursuant to the immediate access provisions of the TRO, the Receiver entered the premises of the Receivership Entities in Miami and Hollywood, Florida and also in Dallas, Texas.  On that same day, the Receiver made contact with Defendant's current counsel in order to facilitate the turnover of certain assets that were purchased with corporate funds, as more fully set forth in the Motion for TRO and accompanying Order.

16. Approximately four weeks later, on November 28, 2018, Defendant's counsel **for the first time** requested company documents and call recordings, ostensibly to respond to the Motion for TRO. By then, the initial schedule had been in place for the hearing on the Motion for TRO for well over a week.  In any event, the Receiver immediately offered access to the premises on the very next day so that relevant documents could be identified by the Defendant and/or his counsel and copied.

17. Instead, the Defendant placed the burden on the Receiver's staff to retrieve documents from the business even though the Defendant was in the best position to locate those documents and the Receiver offered him access to the business premises and the Receivership Entities' computers.  Defendant's counsel provided a list of overly-broad document requests seeking, among other things, copies of the entire electronic mail inboxes from the inception of the company to appointment of the Receiver for nine of the Defendant's former employees, including Mr. Dorfman.[5]  Mr. Dorfman's inbox alone exceeds 20 gigabytes of data.

18. The Receiver's staff immediately set about gathering the requested documents. However, recognizing the breadth of the requests and the amount of data involved, the Receiver requested a call to discuss narrowing the document requests to only those documents necessary

---

[5] The Defendant's document requests also identified which employees the Receiver should contact if he or his staff needed assistance locating documents.  The Receiver has spoken to at least four former Simple Health employees in his effort to locate documents.

to respond to the Motion for TRO.[6]  According to the Defendant, it was not possible to narrow his document requests.

19.     As a result, the Receiver has engaged his staff, including contract IT personnel, in the process of finding, extracting and downloading large amounts of data for production to the Defendant.

20.     At the outset, the Receiver began a rolling production of documents to the Defendant utilizing an FTP site designated by the Defendant for the purpose of uploading documents.  Because of the file size, the file transfer took several days.  And, ultimately, the Defendant's counsel indicated that certain files were corrupt and/or unusable after they were uploaded.  In response, the Receiver reiterated his initial offer to allow the Defendant's counsel to visit the site in order to retrieve files and other documents directly from the company using the vendor of his choice citing the fact that certain environmental differences, which were out of the Receiver's control, may account for the problem.

21.     Instead, the Defendant's counsel provided the Receiver with a hard drive so that files could be loaded directly onto the hard drive and returned to counsel.  The Receiver's staff again went through the process of providing the Defendant with documents to the extent those documents could be located.  On January 14, 2019, the Receiver hand-delivered a hard drive to the Defendant containing the documents that had been requested.  On January 17, 2019, the Defendant's counsel again indicated that certain files may have been corrupted or were unusable, although the specifics of the issues the Defendant's counsel has encountered have not been revealed.

---

[6] The Defendant's counsel initially suggested that it might not be necessary to transfer Mr. Dorfman's inbox. However, when the Receiver's counsel followed up on the necessity of producing Mr. Dorfman's inbox, he was told that this would also need to be provided by the Receiver.

47800128;1

22. In response, the Receiver insisted that the Defendant come on-site to obtain documents pointing out the obvious problem with the Defendant's months-long refusal to engage his own resources to obtain documents, namely that: (i) the Defendant's attempt to export documents with no qualified IT vendor with knowledge of the environment that those documents would be utilized in could account for the apparent issues, (ii) given the Defendant's prior arguments before the Court that certain documents and call recordings were necessary for a defense to the TRO, it would be most efficient for the Defendant to engage his own resources to obtain those documents, and (iii) Defendant's counsel had yet to be clear about what the purported problems with the document production were in their environment. Incidentally, the Receiver's office maintains an identical copy of the production provided to the Defendant and has been able to successfully review and use those documents with no issue.

23. As of the date of this filing, three weeks have passed since the Receiver again asked the Defendant to engage resources capable of exporting Simple Health documents so that they can be reviewed on the platform that his attorneys utilize. According to the Defendant's counsel, resources have yet to be "engaged." The delay in the Defendant engaging an IT vendor to retrieve documents is not occasioned by any act or failure to act on the part of the Receiver or anyone other than the Defendant.

24. At the same time, despite the apparent issues with corrupt documents, the Defendant asked the Receiver to produce three additional call recordings on January 29, 2019, again placing the burden on the Receiver and his staff to locate and produce documents when the Defendant was purportedly hiring a vendor for this purpose.

25. The Receiver has been more than willing to accommodate the Defendant's request for access to company materials and other items, including providing the Defendant with

47800128;1

his golf clubs and personal effects several days ago.  Even so, the Defendant has been unwilling to engage resources to extract the documents he requires, despite the obvious value in acquiring the documents himself.

26. In light of the foregoing, the Receiver believes that the proposed briefing schedule submitted by the FTC should more than allow the Defendant to obtain documents, provided he actually intends to do so, without further prejudicing the receivership estate.

27. The Receiver respectfully requests the entry of an Order setting briefing on the TRO consistent with the scheduled proposed by the FTC.

Date: February 8, 2019

Respectfully submitted,

 /s/ *Naim S. Surgeon*
Michael I. Goldberg, Esq.
Florida Bar No. 886602
Email: michael.goldberg@akerman.com
Naim S. Surgeon, Esq.
Florida Bar No. 101682
Email: naim.surgeon@akerman.com
*Receiver and Counsel for the Receiver*

**AKERMAN LLP**
Las Olas Centre II, Suite 1600
350 East Las Olas Boulevard
Fort Lauderdale, FL  33301-2999
Phone:  (954) 463-2700
Fax:  (954) 463-2224

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on this February 8, 2019 via the Court's notice of electronic filing on all CM/ECF registered users entitled to notice in this case as indicated on the attached Service List.

By: */s/ Naim S. Surgeon*
      Naim S. Surgeon

47800128;1