UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

FEDERAL TRADE COMMISSION,

        Plaintiff,

vs.

SIMPLE HEALTH PLANS LLC, a Florida limited
liability company, et al.,

        Defendants.

**Case No.: 18-cv-62593-DPG**

## PLAINTIFF'S MOTION REGARDING THE FORM OF THE PRELIMINARY INJUNCTION HEARING

Plaintiff Federal Trade Commission submits that the Court should decide the FTC's motion for a preliminary injunction without live testimony, after briefing is complete and the Court has heard the arguments of counsel on April 16. Eleventh Circuit law holds that an evidentiary hearing is required on a motion for preliminary injunction only if the defendant has presented evidence in response that raises a genuine issue of material fact requiring testimony for resolution. In its Preliminary Injunction Scheduling Order, the Court ordered Defendant Steven Dorfman ("Dorfman") to "file with the Court and serve on FTC's counsel any answering pleadings, affidavits, motions, expert reports or declarations or legal memoranda **no later than March 25, 2019**." (D.E. 76 at 1) (emphasis added). In his March 25 filing, Dorfman failed to present any evidence that would come close to creating a genuine issue of material fact and thus an evidentiary hearing is not necessary and the Court should decline to hold one. Alternatively, if the Court determines that live witness testimony would be helpful, then the FTC would seek to present the live testimony of two consumer witnesses, who would describe their experiences with Defendants' deceptive sales practices and the harm that resulted. As discussed in detail in the

FTC's Motion in Limine to Admit Declarations and Exhibits For Purposes of the Preliminary Injunction Hearing (D.E. 106), the Court also should admit the FTC's declarations and exhibits without further testimony from the declarants.

## I.     There Are No Genuine Issues of Material Fact Requiring an Evidentiary Hearing

In its TRO, this Court ordered that "[a]n evidentiary hearing on Plaintiff's request for a preliminary injunction is not necessary unless Defendants demonstrate that they have, and intend to introduce evidence that raises a genuine issue of material fact." (D.E. 15 at 29). This is consistent with Eleventh Circuit law, which requires an evidentiary hearing "for entry of a preliminary injunction only where facts are bitterly contested and credibility determinations must be made to decide whether injunctive relief should issue." *Cumulus Media, Inc. v. Clear Channel Commc'ns*, 304 F.3d 1167, 1178 (l1th Cir. 2002) (internal quotations omitted); *see also McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1310-14 (11th Cir. 1998) (district court did not err in issuing a preliminary injunction without a hearing where material facts were not in dispute).

The corporate defendants have not appeared or defended in this action and entry of a preliminary injunction against them is therefore appropriate without an evidentiary hearing. While Dorfman has appeared and responded, he presented only two documents in opposition to entry of a preliminary injunction—his own self-serving, unsubstantiated affidavit, and a few irrelevant audits conducted by a third party. Dorfman's feeble evidentiary submission stands in contrast to, and does not disturb, the voluminous declarations and documentary evidence presented by the FTC. In addition, the Court-ordered deadline for submitting such evidence (March 25), which Dorfman demanded and which allowed him *six weeks* to prepare his opposition in addition to the over four months since this case was filed, has passed. Dorfman has

2

failed to raise any genuine issues of material fact requiring an evidentiary hearing for resolution. The Court should therefore deny any request by Dorfman that the Court conduct an evidentiary hearing and instead decide the FTC's motion for preliminary injunction on the paper record after hearing the arguments of counsel.

### A. Dorfman's Self-Serving Affidavit Does Not Create a Genuine Issue of Material Fact

The FTC has presented four volumes of evidence in support of the TRO, and will be submitting substantially more evidence with its supplemental filing and reply in support of the preliminary injunction on April 8, 2019, in accordance with the Court's scheduling order.  The evidence in support of the FTC's case includes, among other things, the facially deceptive scripts Defendants used to initially sell their products and then to respond to post-sale complaints from disgruntled consumers; transcripts of recorded sales and customer service calls documenting the misleading claims Defendants regularly made to consumers; transcripts from three undercover sales calls; sworn statements from over 20 consumer victims; and hundreds of pages of records from Defendants' business premises, including scores of consumer complaints provided to Defendants by state regulatory agencies.

After five months of access to his own business premises and records, repeated burdensome demands for documents from the Court-appointed receiver, two grants of expedited discovery, and over 1,500 pages of documents provided by the FTC, Dorfman has effectively submitted only his own, uncorroborated statement *without a single piece of supporting evidence attached to it.* (D.E. 104-1).  Self-serving affidavits containing only conclusory allegations are wholly insufficient to create a genuine issue of material fact requiring an evidentiary hearing for resolution.  The Eleventh Circuit "has consistently held that conclusory allegations without specific supporting facts have no probative value."  *See Leigh v. Warner Bros.*, 212 F.3d 1210,

1217 (11th Cir. 2000); *see also Lynn v. United States,* 365 F.3d 1225, 1238-39 (11th Cir. 2004) (district court was not required to hold an evidentiary hearing based on petitioner's mere conclusory allegations in his affidavit)*; Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990) (mere conclusory allegations and assertions are insufficient to create a disputed issue of material fact).

Moreover, Dorfman's declaration is utterly lacking in specific supporting facts. It contains only two types of information: immaterial information and information that the FTC does not dispute. Much of Dorfman's affidavit is devoted to explanations of his views on how the health care and lead generation industries work. Neither of these explanations has any bearing on the likelihood that the FTC will succeed on the merits of its claims in this case. Dorfman's narrative about the health care industry is irrelevant to the issues presented by the FTC's motion, and in any event, counsel has not attempted to qualify Dorfman as an industry expert. Indeed, Dorfman is not even licensed to sell insurance in the State of Florida or any other state.

Dorfman's opinions about how the healthcare lead generation industry operates also do not create any disputed factual issue. Dorfman does not even contest that Defendants received leads from websites that advertised ACA-compliant, BCBS, and/or AARP health insurance, even though Defendants *did not sell any of those products*. Instead, Dorfman attempts to minimize the obvious deception by discussing how *other entities* that actually did sell comprehensive health insurance or ACA-compliant or BCBS products may also have purchased leads from the same lead generators. Dorfman, of course, does not produce a shred of evidence to support this claim; he does not identify a single one of these purported entities that sold ACA or BCBS products. But even if his claims were true, that would not make his own actions any less deceptive. In fact, in contrasting Defendants' sales with those of the other purported entities

4

selling ACA or BCBS plans, Dorfman essentially admits that the lead generation websites were false at least as to his own sales.

Dorfman also discusses Defendants' "verification process." However, in addition to being undisputed,[1] Defendants' practice of providing ambiguous, post-sale disclosures is legally irrelevant to the question of whether their sales practices are unlawful, and therefore does not create an issue of fact requiring a hearing. As the FTC argued in its opening TRO brief (D.E. 12 at 28-29, 41-42), the law in the Eleventh Circuit is clear that such disclosures do not cure misrepresentations made during the sale, because "[c]aveat emptor is not the law in this circuit." *FTC v. IAB Mktg. Assoc., LP*, 746 F.3d 1228, 1233 (11th Cir. 2014).

Finally, Dorfman's declaration refers generally to a "script" used by his telemarketers, but he does not even bother to attach it for the Court to review. He offers only his self-serving, conclusory assertion that "the script" was used "to ensure that the employees would not misstate or make misrepresentations when selling the insurance plans to potential consumers." (D.E. 104-1 at 13). Incredibly, despite having five months to conduct expedited discovery, and having controlled these businesses since their inception, Dorfman fails to specifically identify or attach this script that purportedly kept all his telemarketers from making misrepresentations. In contrast, the FTC's reply brief will have attached to it over 70 pages of scripts and rebuttals found throughout Defendants' business premises and on every telemarketers' computer, which Dorfman cannot dispute. Those scripts are deceptive on their face, which may explain Dorfman's failure to provide them to the Court. Rather than presenting the Court with actual evidence, all Dorfman offers is his conclusion that "the script" was not deceptive. This is wholly insufficient to create a genuine issue of material fact.

---

[1] The FTC already presented detailed evidence about the verification process in support of its TRO (D.E. 12 at 28-29).

**B.  The Audits Attached to Dorfman's Opposition Brief are Undisputed and Irrelevant**

The only other piece of evidence Dorfman attaches to his response, a copy of three audits conducted by Defendants' third party administrator, Health Insurance Innovations, Inc. ("HII") (D.E. 104-2), is both undisputed by the FTC and also not a "material fact."  The FTC does not dispute that HII conducted these "audits" of whether Defendants were complying with HII's own compliance guidelines.  The audits, however, are irrelevant because they were conducted by HII, Defendants' third party administrator, on whose behalf Defendants were selling policies.  In other words, HII was the largest beneficiary of Defendants' deceptive sales and made hundreds of millions of dollars from those sales.[2]  Whether HII found Defendants' practices to be compliant with HII's internal company policies is inconsequential in this litigation, as the audits in no way rebut the substantial direct evidence presented by the FTC in the form of sales scripts, consumer declarations, and Defendants' own business records proving that they regularly engaged in systematic deception.  To the extent Dorfman is arguing that he relied on these audits when engaging in fraud, that argument fails as well because the FTC need not prove intent to deceive, and a good faith belief in deceptive conduct is no defense.  *See Orkin Exterminating Co. v. FTC*, 849 F.2d 1354, 1368 (11th Cir.1988) (defendant cannot avoid liability under FTC Act by showing he acted in good faith with no intent deceive); *see also Chrysler Corp. v. FTC*, 561 F.2d 357, 363 n.5 (D.C. Cir. 1977) (advertiser's good faith does not immunize it from responsibility for its misrepresentations; intent to deceive is not a necessary element of a violation of § 5).

---

[2]  After the FTC filed this case, HII immediately announced that it had terminated its relationship with Defendants.  *See* http://investor.hiiquote.com/news-releases/news-release-details/health-insurance-innovations-inc-terminates-relationship-health.

**C.  The Court Should Not Allow Dorfman to Play Hours of Call Recordings at the Hearing**

Defense counsel has indicated that he intends to play call recordings at the preliminary injunction hearing for every consumer who provided a declaration in support of the FTC's request for a TRO and preliminary injunction.   It is not clear if Dorfman intends to play only partial recordings of consumers' interactions with Defendants, which would not capture the entirety of the Defendants' deception, or complete recordings, which would take hours of the Court's time.  Either way, such an exercise is completely unnecessary to the Court's determination of whether Dorfman has met his burden to show cause why a preliminary injunction should not issue.  It is also extremely disrespectful to the Court's time and resources. Moreover, the recordings are replete with consumers' highly sensitive health and personally identifiable information, which should not be played in open court.  If Dorfman wanted to use call recordings, he should have transcribed them and attached them to his opposition to the preliminary injunction.  Dorfman could have, at any time during his *five months of expedited discovery*, transcribed the call recordings.  There are 17 consumers who provided declarations in support of the FTC's request for a TRO, and there were sales call recordings on the business premises for at least 13 of those consumers.  Without exception, these recordings support the FTC's claims that Defendants regularly made material misrepresentations to consumers.  Playing these recordings would take over seven hours of the Court's time.  Instead of spending seven hours playing recordings during the preliminary injunction proceeding, the FTC has transcribed all of the sales call recordings for its consumer declarants that were located among Defendants'

records and intends to submit those to the Court in support of entry of the preliminary injunction on April 8.[3]

### D.  Live Consumer Witness Testimony is Not Required at the Preliminary Injunction Hearing

Defense counsel also insists that every one of the FTC's consumer declarants be forced to appear to be cross-examined at the preliminary injunction hearing in order for their statements to be considered.  (D.E. 105).  This is not a full trial on the merits.  Dorfman's argument is nothing more than a last minute attempt to distract, delay, and further harass his victims.  This preposterous demand directly contradicts the Court's TRO, which contemplates that the request for a preliminary injunction "shall be resolved on the pleadings, *declarations*, exhibits and memoranda filed by, and oral argument of, the parties."  (D.E. 15 at 29 (emphasis added)).  In addition, as discussed in the FTC's Motion in Limine to Admit Declarations and Exhibits For Purposes of the Preliminary Injunction Hearing (D.E. 106), there is absolutely no legal basis for Dorfman's demand.  Declarations are routinely admitted at the preliminary injunction stage.  Pursuant to well-established Eleventh Circuit precedent, in deciding whether to enter a preliminary injunction, the Court may rely on affidavits and hearsay materials that otherwise would be inadmissible at a trial on the merits.  *See Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995).  Moreover, for many of these witnesses, the Court will already have *transcripts of their entire calls with Defendants* available to review, in addition to their sworn statements.  Finally, if Dorfman really felt it critical to cross examine these declarants, he should have requested from the Court the authority to depose them at any point

---

[3] While the FTC will be filing the redacted transcripts for these consumer sales calls, the FTC also is happy to provide copies of the audio recordings to the Court for an *in camera* review upon request.

during the last five months, rather than belatedly make this request shortly before the preliminary injunction hearing.

**II.      If the Court is Inclined to Hear Live Witness Testimony, the FTC Proposes Presenting Two Consumer Witnesses**

If the Court is inclined to hold an evidentiary hearing despite the lack of disputed material facts, the FTC would seek leave to present the live testimony of two consumer victims who purchased products from Defendants and who have submitted sworn statements, which will be attached to the FTC's reply in support of the preliminary injunction to be filed on April 8. Although the consumers' testimony will be cumulative of the information presented in their sworn statements, their testimony may nonetheless be helpful to the Court in relating a typical consumer experience.  Combined with the consumer declarations already submitted to the Court and those that will be submitted with the FTC's supplemental briefing, the consumer testimony makes the scope of Defendants' deception abundantly clear.

As the FTC's filings thus far have demonstrated, Defendants' scam is egregious not only because of the blatant misrepresentations and the money consumers lost, but because of the very real and devastating impact this scam had on its victims.  Since the immediate access and service of the complaint, the FTC has independently conducted numerous interviews of consumers who have been victimized by Defendants' practices.  Hearing directly from two of these consumers at the preliminary injunction hearing could be useful to the Court because these consumers can explain how Defendants misled them and the impact Defendants' scam has had on their lives.

There are thousands of consumer victims, but the FTC proposes calling to testify the following two consumers whose experiences are representative of many of Defendants' victims, and who are willing to rearrange their schedules, take time off from work, and travel out of state to appear to testify.  If the Court is inclined to hear live witness testimony, testimony from these

9

consumers will provide relevant, focused testimony without unnecessarily prolonging the hearing.

**1. Christopher Mitchell, Consumer, Independence, KS**

Summary of Testimony:  Several years after Defendants sold Mr. Mitchell what they claimed was a plan that offered comprehensive health care coverage, Mr. Mitchell was diagnosed with cancer.  His testimony will cover his purchase of the plan from Defendants, including what happened during the sales call, and his experience trying to understand and use the plan after his cancer diagnosis.

**2. Elizabeth Belin, Consumer, Westerville, OH**

Summary of Testimony:  Defendants sold Ms. Belin what they called a "PPO" plan that would substantially cover, among other things, a knee replacement surgery she needed in the near future.  Her testimony will cover her purchase of the plan from Defendants, including what happened during the sales call, and her experience trying to understand and use the plan for her knee surgery.

**III.    Conclusion**

For the reasons stated above, the Court should rule on its Order to Show Cause and enter a preliminary injunction based on the evidence of record and the arguments of counsel, without an evidentiary hearing, as no genuine disputes of material fact exist that would require live testimony for resolution and Defendant Dorfman's March 25, 2019 deadline for presenting evidence has passed.  In the alternative, if the Court is inclined to hold a hearing and hear live witness testimony, the Court should permit the FTC to introduce the live testimony of two consumer witnesses.

## FED. R. CIV. P. 26(C)(1) AND LOCAL RULE 7.1(a)(3) CERTIFICATION

Counsel for Plaintiff certifies that they conferred with all parties affected by the relief sought in this motion in a good faith effort to resolve the issues raised in the motion. The Temporary Receiver does not oppose the FTC's motion. Despite reasonable, good faith efforts, the FTC has been unable to resolve this dispute with Counsel for Defendant Steven Dorfman.

Dated: April 3, 2019                    Respectfully submitted,

                                        ALDEN F. ABBOTT
                                        General Counsel

                                        /s/ Joannie Wei
                                        ELIZABETH C. SCOTT, Special Bar No. A5501502
                                        escott@ftc.gov; (312) 960-5609
                                        JAMES H. DAVIS, Special Bar No. A5502004
                                        jdavis@ftc.gov; (312) 960-5611
                                        JOANNIE WEI, Special Bar No. A5502492
                                        jwei@ftc.gov; (312) 960- 5607

                                        Federal Trade Commission
                                        230 S. Dearborn Street, Suite 3030
                                        Chicago, Illinois  60604
                                        Telephone:  (312) 960-5634
                                        Attorneys for Plaintiff
                                        FEDERAL TRADE COMMISSION