## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 18-CV-62593-GAYLES

FEDERAL TRADE COMMISSION,

     Plaintiff,

vs.

SIMPLE HEALTH PLANS LLC, et al,

     Defendants.

_____/

### RECEIVER'S REPLY TO AMANDRA HICKS' MEMORANDUM OF LAW IN OPPOSITION TO RECEIVER'S MOTION FOR ORDER DIRECTING HOMER BONNER JACOBS, P.A. TO TURN OVER SETTLEMENT FUNDS TO RECEIVER

Michael I. Goldberg, as court-appointed receiver (the "Receiver") over defendants Simple Health Plans LLC ("Simple Health"), Health Benefits One LLC, Health Center Management LLC, Innovative Customer Care LLC, Simple Insurance Leads LLC, Senior Benefits One LLC, and their subsidiaries, affiliates, successors and assigns (collectively, the "Receivership Entities") hereby files his reply to Amandra Hicks' Memorandum of Law in Opposition to Receiver's Motion for Order Directing Homer Bonner Jacobs, P.A. to Turn Over Settlement Funds to Receiver (the "Opposition") [ECF No. 132]. In support of this reply and in further support of the Receiver's Motion for Order Directing Homer Bonner Jacobs, P.A. to Turn Over Settlement Funds to Receiver (the "Motion") [ECF No. 90], the Receiver states as follows:

### INTRODUCTION

1.     The Opposition is based upon the faulty premise that because of an October 26, 2018 settlement agreement for $55,000.00 reached between Hicks and Simple Health (the "Settlement Agreement"), which was entered into before the Receiver was appointed, the Motion

should be denied because the funds belong to Amandra Hicks ("Hicks") even though they were never placed in her possession in any manner. Hicks is incorrect.

2.       While the Receiver acknowledges that as a result of the receivership Hicks is a creditor with a claim against the Receivership Estate, the Opposition ignores the explicit terms of this Court's October 31, 2018 Order.[1] The TRO, *inter alia*, appointed the Receiver and placed the Receivership Entities in his control consistent with the powers conferred on the Receiver by the TRO.

3.       Chief among the Receiver's powers, as outlined in the TRO, is to "[t]ake exclusive custody, control, and possession of all Assets and Documents of, or in the possession, custody, or control of any Receivership Entity, wherever situated . . ." . TRO § XII.

4.       Moreover, the TRO enjoins the Defendant and any individual or entity in possession or control of property belonging to the Receivership Entities from conducting business of any kind with property that rightfully belongs to the Receivership Entities. *Id* § III. The Defendant and any individual or entity in possession or control of property belonging to the Receivership Entities, including Simple Health's former counsel, Homer Bonner Jacobs, P.A. ("Homer Bonner"), must "fully cooperate and assist the Receiver" with obtaining control over such property wherever that property is held. *Id.* § XIII.

5.       Pursuant to Paragraph 2 of the Settlement Agreement, the settlement funds were to be issued within twenty (20) days after the joint stipulation of dismissal of prejudice was filed and the Settlement Agreement was executed by Hicks and delivered by electronic mail to Simple

---

[1] This Court entered an *Ex Parte* Temporary Restraining Order with Asset Freeze, Appointment of a Temporary Receiver, and Other Equitable Relief, and Order to Show Cause Why a Preliminary Injunction Should Not Issue [ECF No. 15] (the "TRO") on October 31, 2018 pursuant to the Federal Trade Commission's motion and memorandum of law regarding the same. [ECF Nos. 3 & 12].

48718320;4

Health's attorneys. A true and correct copy of the executed Settlement Agreement is attached as "Composite Exhibit A" to the Motion. [ECF No. 90-1]

6.      On October 31, 2018, before the expiration of the 20-day period to issue the settlement funds to Hicks as outlined in the Settlement Agreement, this Court entered the aforementioned TRO. The Settlement Agreement contained no provisions requiring a transfer of the settlement funds to a temporary escrow account. Consequently, the settlement funds at issue were never transferred to a temporary escrow account but were, instead, held in Homer Bonner's trust account.

7.      In compliance with the terms of this Court's TRO, Homer Bonner contacted the Receiver to advise him of the $55,000.00 in settlement funds held in trust for Simple Health. The funds that would have otherwise been payable to Hicks under the Settlement Agreement are and remain property of the receivership estate.  As a result, the express terms of the TRO obligate the Receiver to secure those funds and to treat Hicks as any other similarly-situated creditor of the estate. The Motion should be granted.

## ARGUMENT

I.  **As Property of the Receivership Estate, the Receiver Maintains Exclusive Control over the Settlement Funds.**

Despite there being no provision in the Settlement Agreement that would have required Homer Bonner to transfer the settlement funds into a temporary escrow account, Hicks contends in the Opposition that Simple Health's deposit of the settlement funds into its own attorney's trust account was tantamount to a transfer of the settlement funds into a temporary escrow account. That is simply not the case here.

Hicks' reliance on *In re Scanlon*, 239 F.3d 1195 (11th Cir. 2001) to support her contention that the Receiver's Motion should be denied and that Hicks is entitled to the settlement funds is

misplaced. As Hicks cites in her own Opposition, the Eleventh Circuit held *In re Scanlon* that under Florida law, where a debtor deposits funds into a ***temporary escrow account*** in ***accordance with a settlement agreement requiring*** that it do so, the funds "are not part of the bankruptcy estate." at 1199 (emphasis added). However, the facts of *In re Scanlon* are readily and entirely distinguishable from the instant matter.

First, unlike the Debtor's settlement agreement in *In re Scanlon*, the Settlement Agreement here did not ***require*** a transfer of the settlement funds to a temporary trust account pending the establishment of an independent escrow agency, but merely that the settlement proceeds be forwarded to Hicks within twenty (20) days after the dismissal was filed. [ECF No. 90-1] ¶ 2. Absent any condition in the Settlement Agreement outlining how, where, or when the settlement funds were to be transferred –as existed in *In re Scanlon* –the settlement funds here were simply held in trust by Simple Health's pre-receivership counsel with no explicit instructions on what was to be done with them.

Second, unlike the Debtor in *In re Scanlon*, Simple Health retained control over the funds that were placed into its counsel's trust account at its volition. In *In re Scanlon,* the Eleventh Circuit, found that "the Debtor 'did not have control over the funds that were in the trust account, and could not direct who would receive the funds.'" *Id.* at 1198 (quotation omitted). Moreover, in *In re Scanlon*, it was the Debtor's mother-in-law who transferred the settlement funds to the temporary escrow account "'with the implicit instructions that they were to be used to satisfy the settlement agreement.'" *Id.* (quotation omitted). It is undisputed in the present case that Simple Health merely forwarded the settlement funds to its counsel's trust account. While the parties had agreed to the terms of the Settlement Agreement prior to the commencement of the receivership, the conditions of the Settlement Agreement had not been finalized. As Hicks states in the

48718320;4

Opposition, the Stipulation of Dismissal was filed on October 29, 2018. [ECF No. 132 at 3]. On that same date, the Federal Trade Commission filed this action and, subsequently, under the terms of the TRO, the undersigned was appointed as Receiver over the Receivership Entities. During that time, the settlement funds remained in Homer Bonner's trust account without any instruction –express or implied– as to where they were to be directed or how they were to be used.

Third, unlike *In re Scanlon*, there was no escrow agreement or court order directing the means by which the funds in Homer Bonner's trust account were to be transferred. This distinction is paramount as it underscores who owned the settlement funds at the commencement of the receivership. In the Opposition, Hicks attempts to distinguish *In re B&B Plastics, Inc.*, No. 04-26039-BKC-PGH, 2005 WL 3198656 (Bankr. S.D. Fla. Aug. 10, 2005), which is relied on by the Receiver, by analogizing the Debtor's transfer of the settlement funds in *In re Scanlon **to an escrow account*** to Simple Health's transfer of the settlement funds to its counsel's ***trust account***. This analogy lacks any factual support under the circumstances present here.  The only common thread here is that in both cases the settlement funds had been earmarked as compensation in the underlying matters, just as the royalty payments in the *In re B&B Plastics, Inc.* case had been transferred to the debtor attorney's trust account to compensate the party in that case. But that is where the similarities end. The Opposition completely ignores critical facts that explain why this case is inapposite to the *In re Scanlon* case. There was ***no escrow agreement*** mandating that the settlement funds in this case be deposited into an escrow account. Akin to *In re B&B Plastics, Inc.*, the settlement funds here were voluntarily transferred and subsequently held in Homer Bonner's trust account, and therefore remained the property of Simple Health. *See, e.g.*, *Wilson v. United Sav. of Texas (In re Missionary Baptist Found. of Am. Inc.)*, 792 F.2d 502, 506 (5th Cir. 1986) (where condition of escrow was unfulfilled, funds in escrow became property of the estate); *see*

48718320;4

*also In re Bankest Capital Corp.*, 374 B.R. 333, 342 (Bankr. S.D. Fla. 2007) (holding debtor had control over funds placed into its attorney's trust account where no escrow agreement was established since "[p]arties who allegedly transfer funds in escrow are entitled to no priority or preference over other claimants when they fail to use reasonable diligence to protect themselves.") (citation and quotation omitted).

Following this Court's entry of the TRO on October 31, 2018, Hicks lost her ability to directly collect the settlement funds from Homer Bonner. Moreover, absent a pre-receivership escrow agreement or court order directing a transfer of the settlement funds, Hick's reliance on the *In re Scanlon* case is misguided. The TRO mandates that the Receiver prevent the inequitable distribution of assets by determining, adjusting, and protecting the interests of consumers who have transacted business with the Receivership Entities. Indeed, Section XIII of the TRO broadly outlines the process for the transfer of receivership property to the Receiver. This transfer of property includes "A. All Assets held by or for the benefit of the Receivership Entities" and "D. All Assets and Documents belonging to other persons or entities whose interests are under the direction, possession, custody, or control of the Receivership Entities." *Id.* Given that the Settlement Agreement lacks any provision that would have required Simple Health to escrow the proposed settlement amount, there can be no dispute that those funds are assets of the receivership estate under the terms of the TRO.

WHEREFORE, the Receiver requests that the Court enter an Order directing the turn over of the $55,000.00 being held in trust on behalf of Defendant, Simple Health Plans, LLC and for all other and further relief that this Court deems just and proper.

48718320;4

Dated: April 26, 2019                    Respectfully submitted,


                                         _/s/ *Naim S. Surgeon*_
                                         Naim S. Surgeon, Esq.
                                         Florida Bar No. 101682
                                         Email: naim.surgeon@akerman.com
                                         Royce B. Badger Jr., Esq.
                                         Florida Bar Number:  115394
                                         Email:  royce.badger@akerman.com
                                         *Counsel for the Receiver*

                                         **AKERMAN LLP**
                                         Las Olas Centre II, Suite 1600
                                         350 East Las Olas Boulevard
                                         Fort Lauderdale, FL  33301-2999
                                         Phone:  (954) 463-2700
                                         Fax:  (954) 463-2224

48718320;4