UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | |
| Plaintiff, | |
| vs. | **Case No.: 18-cv-62593-DPG** |
| SIMPLE HEALTH PLANS LLC, a Florida limited liability company, et al., | |
| Defendants. | |

**PLAINTIFF FEDERAL TRADE COMMISSION'S OPPOSITION TO DEFENDANT STEVEN DORFMAN'S MOTION TO DISMISS**

I.     **Introduction**

The Federal Trade Commission's ("FTC") complaint describes a massive telemarketing scam that defrauded tens of thousands of consumers across the country out of over $150 million by claiming to offer comprehensive health insurance or its equivalent but instead enrolling these consumers in products that provided virtually none of the promised benefits. The complaint identifies one individual defendant, Steven Dorfman, as the owner and an officer of all six corporate defendants. Over the course of twenty-eight pages, the complaint explains with exacting particularity how Dorfman operated this scam through his network of corporate alter egos, the harm caused to consumers, and the way this conduct violated both the Federal Trade Commission Act ("FTC Act") as well as the Telemarketing Sales Rule ("TSR").

Dorfman now seeks dismissal of the FTC's claims. His motion is a jumble of new and recycled arguments that challenge the FTC's pleadings, the Court's jurisdiction, and the

availability of certain remedies.[1]  These arguments largely ignore the complaint's detailed allegations, and misstate or entirely omit controlling law.

The FTC's complaint exceeds federal pleading requirements.  The "short and plain statement" required by Federal Rule of Civil Procedure 8(a) is easily satisfied by the detailed description of both the deceptive practices that characterize Defendants' scheme as well as Dorfman's responsibility for these practices.  Although not applicable to claims under the FTC Act, the complaint also meets Rule 9(b)'s heightened pleading standard by alleging with particularity the circumstances and nature of Defendants' scam.  Contrary to Dorfman's assertion, neither Rule 8(a) nor 9(b) require the FTC to specify which allegations apply to which defendants.

In asserting for the first time that the McCarran-Ferguson Act purportedly deprives the Court of subject matter jurisdiction over this matter, Dorfman fails to cite *IAB Mktg.,* a 2014 Eleventh Circuit case rejecting the same challenge raised by defendants engaged in the same conduct as Dorfman.  This controlling authority articulates a clear test for determining whether the FTC would lack jurisdiction.  Dorfman does not acknowledge this test or *IAB*, both of which unquestionably show that the McCarran-Ferguson Act has no effect on the Court's jurisdiction here.

Dorfman's remaining challenges to certain remedies sought by the FTC are both procedurally and substantively deficient.  Rule 12(f), which Dorfman relies on in requesting that the Court "strike" these remedies, is neither an authorized nor a proper way to seek dismissal of all or part of a complaint.  Regardless, Dorfman dedicates half of his memorandum to again arguing about the availability of restitution and disgorgement under Section 5 of the FTC Act --

---

[1] Dorfman's motion is not accompanied by a proposed order, as required by the Court's rules and Local Rule 7.1(a)(2).  As a result, the nature and scope of the relief he is requesting is unclear.

issues that he has raised numerous times and which the Court has already resolved in the FTC's favor. Finally, "mutual mistake" is not an element of an FTC Act claim and Dorfman cites no authority to the contrary.

## II.     The FTC's Complaint Satisfies the Relevant Pleading Standards

Dorfman asserts that the FTC's complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for its purported failure to comply with the pleading requirements of Rules 8(a) and 9(b). In each case, Dorfman's argument is the same, namely that the FTC has impermissibly "lumped" all Defendants together by failing to identify which Defendants carried out which specific acts (D.E. 134, pp. 3-4, 6). His arguments contain no meaningful analysis, do not account for well-established standards of common enterprise and individual liability, and are inconsistent with the FTC's complaint allegations, which must be taken as true for the purpose of this motion.

### A.     Applicable Standards

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a plaintiff's complaint. The threshold of sufficiency that a complaint must meet to survive such a motion is "exceedingly low." *Ancata v. Prison Health Services. Inc.* 769 F.2d 700, 703 (11th Cir. 1985) (citations omitted). When evaluating a 12(b)(6) motion, a district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *See id.*; *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010).

Rule 8(a)(2) lays out the general pleading standard, requiring only "a short and plain statement of the claim showing that the pleader is entitled to relief." That statement must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Rule 8 does not require

"detailed factual allegations" to survive a motion to dismiss, simply more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"); *see also FTC v. Student Aid Ctr., Inc.* 281 F. Supp. 3d. 1324, 1330 (S.D. Fla. 2016).

Rule 9(b) establishes a heightened pleading standard for complaints "alleging fraud or mistake," requiring a party making such allegations to state "with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Under this requirement, a plaintiff must "plead the who, what, when, where, and how of the allegedly false statements." *Student Aid Ctr*. at 1331 (*quoting Mizzaro v. Home Depot, Inc.,* 544 F.3d 1230, 1237 (11th Cir. 2008)). These requirements may be relaxed when facts relating to the fraud are "peculiarly" within the perpetrator's knowledge. *See FTC v. Centro Natural Corp*., 2014 WL 752697, at *7 (S.D. Fla. Feb. 10, 2014) (*citing Hill v. Moorehouse Med. Assocs.*, 2003 WL 22019936, at *3 (11th Cir. Aug. 15, 2003)); *see also Barys ex rel U.S. v. Vitas Healthcare Corp.*, 298 Fed. App'x., 893, 897 (11th Cir. 2008). A majority of courts have declined to extend Rule 9(b)'s heightened pleading requirements to FTC enforcement actions, and no precedent compels this Court to do otherwise.[2]

---

[2] *See, e.g., FTC v. Freecom Communications, Inc.*, 401 F.3d 1192, 1204 n.7 (10th Cir. 2005) (holding that a Section 5 claim is not a claim of fraud because "[u]nlike the elements of common law fraud, the FTC need not prove scienter, reliance, or injury…"); *FTC v. Hornbeam Special Sol, LLC*, 308 F. Supp.3d 1280, 1286-87 (N.D. Ga. 2018); *Student Aid Ctr.*, 281 F. Supp. 3d. at 1332; *FTC v. HES Merchant Services Company*, 2014 WL 12611275, at *3-4 (M.D. Fla. Feb. 20, 2014); *Sterling Precious Metals*, 2013 WL 595713, at *3 (S.D. Fla. Feb. 15, 2013); *FTC v. Consumer Health Benefits Ass'n,* 2011 WL 3652248, at *10 (E.D.N.Y. Aug. 18, 2011).

**B.     Plaintiff's Complaint Satisfies Both Rule 8(a) and Rule 9(b)**

*1.     The FTC's Complaint Contains Detailed Allegations of Defendants'
Scheme as well as Dorfman's Liability for this Conduct*

Regardless of which pleading standard the Court applies, the FTC's 28-page complaint

contains extensive allegations that easily meet and exceed the requirements of both Rule 8(a) and

Rule 9(b).  The complaint is a detailed roadmap of each step of Defendants' scheme, describing:

- Sales practices conducted since at least October 2013, primarily through outbound telemarketing, that promote "PPO" health insurance policies or their equivalent.  D.E. 1, ¶ 15;

- Deceptive lead generation tactics, including the use of websites falsely touting Defendants' non-existent affiliation with Blue Cross Blue Shield and AARP, which preyed on consumers searching online for comprehensive health insurance or its equivalent.  *Id*., ¶¶ 21-35;

- Defendants' sales pitch, in which their telemarketers falsely claimed to sell comprehensive health insurance or its equivalent, including insurance that meets the requirements of the Affordable Care Act.  *Id.*, ¶¶ 36-43;

- The enrollment fees and ongoing monthly fees charged by Defendants to consumers. *Id*. ¶ 38;

- Defendants' post-sale verification process, which consists of a series of oral or electronic disclosures that frequently contradict promises made during the sales pitch and which consumers are instructed to ignore and not to question.  *Id*. ¶¶ 44-47;

- An explanation of the products actually sold by Defendants to consumers, how these products differ from comprehensive insurance, and an account of an undercover transaction conducted by the FTC.  *Id*. ¶¶ 48-50;

- A description of the harm caused by Defendants' scheme, both in terms of the total number of consumers affected, as well as the way it has injured individual consumers who have incurred substantial medical expenses under the mistaken belief that these expenses would be covered by the insurance they thought they had purchased from Defendants.  *Id.*, ¶¶ 51-53;

- A description of the problems encountered by consumers who contacted Defendants seeking cancellations or refunds.  *Id*., ¶ 54; and

- The four specific misrepresentations that Defendants are alleged to have made in violation of the FTC Act and the TSR.  *Id*., ¶¶ 57-59, 64-65.

5

The complaint also outlines Dorfman's responsibility for this conduct, identifying him as an "owner, officer, member, or manager" of all six of the named corporate defendants. *Id*., ¶ 12. It further alleges that Dorfman manages the operations of these corporations and is a signatory on their bank accounts. *Id*. Finally, it asserts that Dorfman oversaw the common enterprise that exists between the six corporate defendants. Specifically, as alleged in the complaint, Dorfman "formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Corporate Defendants that constitute the common enterprise." *Id*., ¶ 13.

Dorfman's assertion that the FTC has impermissibly "lumped" all Defendants together by failing to identify which Defendants carried out which specific acts (D.E. 134, pp. 3-4, 6) ignores the specific allegations regarding his conduct. Moreover, this argument is inconsistent with the standards for common enterprise and individual liability. Corporate entities that operate as a common enterprise can be held liable for one another's deceptive acts and practices. *See FTC v. HES Merchant Servs. Co., Inc.,* 2014 WL 6863506, at *5 (M.D. Fla. Nov. 18, 2014); *FTC v. Wash. Data Res.,* 856 F. Supp. 2d 1247, 1271 (M.D. Fla. 2012); *FTC v. Lanier Law, LLC*, 715 F. App'x 970, 979 (11th Cir. 2017) (per curiam). A common enterprise may exist where nominally separate corporate entities are under common control, share office space and officers, and comingle funds. *See HES Merchant Servs.*, 2014 WL 6863506, at *5; *Wash Data Res.*, 856 F. Supp. 2d at 1271; *Lanier Law*, 715 F. App'x at 979. Similarly, individuals may be held liable for the deceptive acts of corporations if it can be shown that they: (1) participated directly in the deceptive practices or acts or had authority to control them; and (2) had some knowledge of these practices. *See FTC v. IAB Mktg. Assoc., LP*, 746 F.3d 1228, 1233 (11th Cir. 2014); *FTC v. Gem Merch. Corp.*, 87 F.3d 466, 470 (11th Cir. 1996).

Here, the FTC has alleged each of the factors that show the existence of a common enterprise consisting of the six named corporate defendants as well as a basis for holding Dorfman individually liable for the practices of these entities.  In particular, the FTC adequately alleged the existence of common enterprise liability by claiming that the six corporate defendants "have common ownership, officers, managers, business functions, and office locations, which have comingled assets, and which hold themselves out as Simple Health."  D.E. 1, ¶ 13.  The complaint establishes Dorfman's liability for the acts of this common enterprise by alleging that he served as an officer of each corporate defendant, managed their operations, as well as "formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Corporate Defendants that constitute the common enterprise."  *Id.*, ¶¶ 12, 13. Dorfman can neither negate these allegations nor avoid the application of common enterprise and individual liability by simply repeating the term "lumping."[3]  Under these straightforward principles and alleged facts, each aspect of the challenged conduct need not be attributed specifically to a single defendant, because it can collectively be attributed to Dorfman and the six entities that he used interchangeably to run this operation.[4]

---

[3] The same holds true for Dorfman's attempt to characterize the FTC's complaint as a so-called "shotgun pleading" (D.E. 134, pp. 3) by analogizing it to cases such as *Fischer v. Fed. Nat'l Mortg. Ass'n.*, 302 F. Supp.3d 1327 (S.D. Fla. 2018), *Lane v. Capital Acquisitions and Mgmt. Co.*, 2006 WL 459070 (S.D. Fla. Apr. 14, 2016), and *Diamond Resorts Int'l, Inc. v. US Consumers Attorneys, P.A.*, 2018 WL 6621363 (S.D. Fla. Oct. 2018).  These cases are not remotely applicable.  Unlike this matter, none of the cases relied on by Dorfman involved allegations of common enterprise liability under the FTC Act and the corresponding liability of the individual who oversaw the enterprise.

[4] Even if common enterprise and individual liability did not apply to the FTC's complaint, the general rule in the Eleventh Circuit for multi-defendant pleadings is that "the allegations can be and usually are to be read in such a way that each defendant is having the allegation made about him individually."  *Crowe v. Coleman*, 113 F.3d 1536, 1539 (11th Cir. 1997); *Hornbeam Special Sol.*, 308 F.Supp.3d at 1288.

### 2. *Plaintiff's Complaint Satisfies Rule 8(a)'s Pleading Requirements*

The extensive allegations in the FTC's complaint described above easily exceed Fed. R.

Civ. P. 8(a)'s requirement of a "short and plain statement of the claim."  They name Dorfman as

the sole owner and an officer of all six corporations through which this enterprise operated; they

describe with specificity the websites, sales tactics, and products sold to consumers and explain

how these products differed from what consumers were promised; and they identify specific

misrepresentations made by Defendants and their telemarketers to consumers in the sale of these

products as well as the two statutory provisions allegedly violated by this conduct.  Moreover,

the complaint provides numerous examples of the misleading and deceptive statements used by

Defendants in their lead generation and sales practices, including screenshots of websites and

post-sale "verification" disclosures.  *See, e.g., id.,* Images D-H.[5]  Without question, the

particularity of these allegations surpasses the "short and plain statement" required by Rule 8(a),

providing Dorfman with ample notice of the claims against him and the grounds upon which

these claims are based.  *See, e.g., Student Aid Ctr.*, 281 F. Supp.3d at 1331 (finding that an FTC

complaint alleging the defendants operated an unlawful debt relief enterprise in violation of the

FTC Act and TSR satisfied the "exceedingly low notice pleading standard of Rule 8").

### 3. *Plaintiff's Complaint Satisfies Rule 9(b)'s Pleading Requirements*

Even analyzed under Fed. R. Civ. P. 9(b)'s heightened pleading requirement,[6] the FTC's

complaint satisfies this requirement by alleging in exhaustive detail the who, what, when, where,

---

[5] In the case of lead generation websites, the complaint even specifies whether a particular site identified by name is operated by Defendants or third parties.  *See, e.g., id.*, ¶¶ 30-31.

[6] As explained above in note 2, courts in this district and elsewhere have held that Rule 9(b)'s heightened particularity requirement does not apply to enforcement actions brought pursuant to the FTC Act and the TSR.  These courts have generally observed that the FTC's claims are not the same as fraud, do not require the same proof, and that the Commission's statutory mandate to deter deceptive acts and practices is dissimilar to a fraud action.  *See, e.g., Freecom Communications, Inc.*, 401 F.3d at 1204 n.7.  Dorfman

and how of the deceptive conduct on which its Section 5 and TSR counts are based. *See Mizzaro*, 544 F.3d at 1237. The complaint identifies *who* perpetrated this scam-- Dorfman and his six corporate co-defendants (D.E. 1, ¶¶ 6-13) -- and also identifies their victims -- consumers throughout the United States searching for comprehensive health insurance. *Id.*, ¶¶ 6-11, 21. With even greater particularity, the complaint catalogs *what* practices Defendants are alleged to have engaged in, and *how* they engaged in them, including highly specific descriptions of their lead generation and outbound telemarketing sales practices. *Id*, ¶¶ 21-54. For example, the complaint extensively documents the misleading nature of Defendants' business model, carefully contrasting what consumers are promised during the sales pitch with the products that Defendants actually provide. *See id.*, ¶¶ 38, 40 (promised coverage and benefits) and ¶¶ 48-50 (actual products). These allegations are supported by references to recorded undercover transactions conducted by the FTC. *Id.*, ¶ 47, 50; *see Centro Natural*, 2014 WL 7525697, at *7 (finding that FTC complaint satisfied 9(b), in part, by listing an example of call made to consumer). Finally, the complaint pinpoints the month and year *when* the scheme began (October 2013) and identifies the principal place of business *where* each corporate defendant operates. *Id.* ¶¶ 6-11, 15.

The FTC's allegations, which span over 50 paragraphs and 20 pages, are similar to, or more detailed than, other FTC complaints upheld by courts in this Circuit under Rule 9(b)'s heightened pleading requirements. *See, e.g.*, *Centro Natural,* 2014 WL 7525697, at *6; *HES Merchant Services,* 2014 WL 12611275, at *2; *FTC v. IAB Mktg. Assoc.*, LP, 2013 WL 11330607, at *1 (S.D. Fla. Nov. 8, 2013); *FTC v. Am. Precious Metals*, LLC, 2012 WL 13114034 (S.D. Fla. Apr. 12, 2012). In fact, Dorfman and his corporate alter egos are charged

---

cites *FTC v. Am. Precious Metals*, LLC, 2012 WL 13114034 (S.D. Fla. Apr. 12, 2012), in which the court held the Rule 9(b)'s heightened pleading standards should apply to FTC Act claims, but fails to note that Judge Scola ultimately concluded that the Commission's complaint satisfied this standard.

with running a scheme virtually identical to the *IAB* defendants – a telemarketing enterprise that sold medical discount memberships disguised as comprehensive health insurance. *See IAB Mktg.*, 746 F.3d at 1231 (describing FTC's complaint against IAB defendants). There are also notable similarities to *Centro Natural*, where the court determined that a less stringent Rule 9(b) analysis would be appropriate because the complaint alleged that the defendants, like Dorfman, operated their scheme "through a web of interconnected companies," suggesting that information relating to the fraud would be "peculiarly" within their control. *Centro Natural*, 2014 WL 752697 at *7. The same relaxed particularity analysis is especially suitable here given that Dorfman is alleged to control, direct, and participate in the practices of all of the entities that make up Defendants' common enterprise. In other words, notwithstanding Dorfman's repeated objection to having been "lumped" together with the other defendants,[7] as the owner of every one of those defendants, he has not been deprived of any information needed to answer the complaint.

III.    **Dorfman's Rule 12(f) Motion to Strike is Both Procedurally and Substantively Defective**

Citing Fed. R. Civ. P. 12(f), Dorfman asks the Court to strike the FTC's request for restitution, disgorgement, and rescission and reformation of contracts. *See* D.E. 134, pp. 7-17. Rule 12(f) is not an appropriate vehicle for raising these challenges. Regardless, Dorfman's arguments have either already been rejected by the Court or are without merit.

A.    **Rule 12(f) Does Not Authorize the Relief Sought by Dorfman**

Under Rule 12(f), a district court "may strike from a pleading an insufficient *defense* or any redundant, immaterial, impertinent, or scandalous matter" (emphasis added). As the rule's plain language makes clear, "it is neither an authorized nor a proper way to procure the dismissal

_____

[7] With no meaningful analysis, Dorfman uses the term "lump" and "lumping" nine times in just over six pages. *See* D.E. 134 at pp. 1-6.

of all or part of a complaint." *Federal Practice and Procedure*, § 1380; *see also Williams v. Delray Auto Mall, Inc.*, 289 F.R.D. 697, 700 (S.D. Fla. 2013).  Indeed, Dorfman's motion is devoid of any analysis whatsoever of how the remedies that he objects to are: (1) an insufficient defense; (2) redundant; (3) immaterial; (4) impertinent; or (5) scandalous.  Courts have rejected similar attempts to improperly use Rule 12(f) as a means of striking substantive claims for relief. *See, e.g.*, *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973-74 (9th Cir. 2010) (defendant's motion to strike plaintiff's claim for damages better suited for motion for summary judgment or failure to state a claim); *Thomas-Byass v. Michael Kors Stores, Inc.*, 2015 WL 13756100, at *2-3 (C.D. Ca. Sept. 16, 2015) (rejecting motion to strike claim for disgorgement as an improper use of Rule 12(f)).  Dorfman's motion to strike should be similarly denied.

### B.    Established Eleventh Circuit Precedent and Law of the Case Authorize the FTC to Seek the Remedies in its Complaint

#### 1.    The Court Has Already Ruled that the FTC Can Seek Restitution and Disgorgement

Well over half of Dorfman's motion consists of yet another recitation of his arguments challenging the FTC's ability to obtain certain forms of relief under Section 13(b) of the FTC Act, which itself is supplemented by his 42-page appellate brief "for the Court's convenience." *See* D.E. 134 at pp. 6-15, n.1.  Dorfman has advanced these same arguments on countless other occasions.  They do not merit a substantive response – the FTC addressed Dorfman's challenges extensively (D.E. 81), the Court ruled in the FTC's favor (D.E. 83), and Dorfman raises nothing new here.

#### 2.    The FTC is Not Required to Allege "Mutual Mistake"

In addition to being an improper use of Rule 12(f), Dorfman's motion to strike the FTC's request for rescission and reformation of contracts should be denied for at least two additional

11

reasons.  *First*, it is inappropriately based largely on exhibits and other matters outside the FTC's complaint.  *See Thompson v. Kindred Nursing Ctrs East LLC*, 211 F. Supp. 2d, 1345, 1347 (M.D. Fla. 2002) (when deciding motion to strike, courts "cannot consider matters beyond the pleadings") (citation omitted).  *Second*, Dorfman's argument would effectively impose a new requirement for pleading claims for relief under the FTC Act.  Section 5 prohibits "deceptive acts or practices in or affecting commerce."  15 U.S.C. § 45(a).  An act or practice is deceptive if it involves a material misrepresentation or omission that is likely to mislead consumers acting reasonably under the circumstances.  *See FTC v. People Credit First, LLC*, 244 F. App'x 942, 944 (11th Cir. 2007) (per curiam) (following *FTC v. Tashman*, 318 F.3d 1273, 1277 (11th Cir. 2003)).  As already noted, the complaint alleges the elements of a claim for relief under the FTC Act against Defendants as well as Dorfman's liability for injunctive and monetary relief.  Nothing in the FTC Act, or cases interpreting it, requires the Commission to allege "mutual mistake" in order to request the equitable remedy of rescission.  None of the authority cited by Dorfman holds otherwise.

## IV.    The McCarran-Ferguson Act Does Not Deprive the Court of Subject Matter Jurisdiction

The jurisdictional limitation of the McCarran-Ferguson Act, which prohibits the Commission from regulating activities that constitute "the business of insurance," has no effect on this case.  In a three-page argument raising this threshold issue for the very first time despite months of briefing on other issues, Dorfman cites the correct provision of the act, 15 U.S.C. § 1012, notes that Fed. R. Civ. P. 12(b)(1) permits a district court to dismiss a case for lack of subject matter jurisdiction, and also cites appellate authority interpreting the rule.  Incredibly, however, Dorfman makes *no reference whatsoever* to the controlling Eleventh Circuit opinion interpreting the statutory provision on which his argument is based, *IAB Mktg.*, 746 F.3d 1228.

This is not an oversight.  Dorfman has cited *IAB Mktg.* previously in this litigation, including as recently as two weeks ago.  *See* D.E. 135, p. 1.[8]  His failure to acknowledge this case, much less to attempt to distinguish it, is telling.

In *IAB Mktg.*, the Eleventh Circuit found that Section 1012(b) of the McCarran-Ferguson Act did not deprive the district court of subject matter jurisdiction over an FTC complaint alleging virtually the same conduct at issue here.  *See IAB Mktg.*, 746 F.3d at 1231, 1235-36. Specifically, in *IAB*, the court of appeals held that defendants alleged to have deceptively marketed medical discount memberships via telemarketing did not engage in the "business of insurance" within the meaning of the McCarrran-Ferguson Act.[9]  *Id.*  According to the Eleventh Circuit, a practice constitutes the "business of insurance" only if meets the following three-part test:  (1) "the practice has the effect of transferring or spreading a policyholder's risk;" (2) "the practice is an integral part of the policy relationship between the insurer and the insured;" and (3) "the practice is limited to entities within the insurance industry."  *Id.* (*quoting Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 129 (1982)).  The court of appeals found that IAB satisfied none of these factors:  (1) it incurred no transfer or spreading of risk in the sale of the medical discount products that it sold; (2) no relationship of an insurer and insured existed between IAB and its customers; and (3) the sale of medical discount plans is not limited to entities within the insurance industry.  *See IAB Mktg.*, 746 F.3d at 1236.

---

[8] Although not authorized by either the local rules or the Court's briefing schedule, Dorfman filed a pleading on April 29, 2019, requesting that the Court consider arguments raised in his motion to dismiss in determining whether to grant the FTC's pending motion for preliminary injunction.  *See* D.E. 135. Dorfman's so-called "Notice of Supplemental Authority" does not, in fact, bring any supplemental authority to the Court's attention.  The *only* case cited by Dorfman in this notice is *IAB Mktg.*, which he has cited previously in his brief in opposition to the preliminary injunction.  *See* D.E. 104, p. 14.

[9] The reverse-preemption provision of the act provides:  "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance."  15 U.S.C. 1012(b).

Not surprisingly, Dorfman fails to bring to the Court's attention the controlling standard articulated in *IAB Mktg.* and *Pireno* because he, too, fails to satisfy any of the relevant factors.[10] First, Defendants' limited benefit plans and medical discount memberships involved no transferring or spreading of the policyholder's risk.  D.E. 1, ¶ 19; *see also* D.E. 12-10, pp. 6-7, 11 (Report of FTC's Expert Witness, Dr. Brian Miller, noting that products sold by Defendants do not transfer risk from insured to insurer).[11]  In fact, similar to *IAB*, Defendants actually sold memberships in association plans rather than conventional insurance policies.  *See* D.E. 12-10, pp. 6, 18.  Under this arrangement, the consumer is not the policyholder and Defendants bear no risk when they enroll consumers in these products.  *See, e.g., id.*, p. 65 (Certificate of Coverage defining "policyholder" as National Congress of Employers).  Second, Defendants' sale of limited benefit plans and medical discount memberships does not represent an "integral part" of any "policy relationship" between an "insurer and [an] insured." *Pireno*, 458 U.S. at 129. Defendants' relationship with the issuers of these products or their carriers is not at issue here. Rather, the relevant relationship—in which misrepresentations played an integral part—is between Defendants and the consumers they misled.  Finally, the products sold by Defendants are not "limited to entities within the insurance industry," as Defendants sold numerous non-insurance products to consumers.  *Id.*

---

[10] The mere fact that Defendants have been investigated and disciplined by numerous state departments of insurance does not mean their deceptive conduct is beyond the reach of the FTC.  The same was true of the defendants in *IAB*, but the Eleventh Circuit rightly noted that the proper inquiry is whether the conduct at issue meets the three-part test articulated by the Supreme Court in *Pireno*, not simply whether the defendants have been subject to state regulation.  *See IAB Mktg.*, 746 F.3d at 1235.

[11] As Dorfman correctly notes, the Court may consider matters outside the FTC's complaint in weighing the merits of a challenge to its subject matter jurisdiction under Rule 12(b)(1).  *See Morrison v. Amway Corp.* 323 F.3d 920, 925 (11th Cir. 2003).

14

Defendants did not engage in the "business of insurance" as this term has been clearly defined by both the Eleventh Circuit and the Supreme Court.  Accordingly, the McCarran-Ferguson Act does not deprive the Court of jurisdiction over this matter.

**V.    Conclusion**

Defendant Steven Dorfman has filed a motion to dismiss that fails to meaningfully engage with the FTC's allegations against him and ignores well-established standards of common enterprise and individual liability.  The FTC's complaint exhaustively describes Defendants' telemarketing scam as well as Dorfman's role in it.  Taken in any light, let alone one most favorable to the FTC, these allegations meet or exceed applicable federal pleading standards.  The other challenges raised by Dorfman in his motion are even less persuasive.  They consist of a procedurally and substantively flawed motion to strike based almost entirely on a proposition already rejected by the Court.  Finally, Dorfman's claim that the Court lacks subject matter jurisdiction is premised on factual and legal arguments that the Eleventh Circuit has thoroughly rejected and, in typical fashion, Dorfman completely ignores.  Dorfman's Motion to Dismiss the FTC's Complaint should be denied.

Dated: May 13, 2019                    Respectfully submitted,

                                       ALDEN F. ABBOTT
                                       General Counsel

                                       */s/ James H. Davis*
                                       ELIZABETH C. SCOTT, Special Bar No. A5501502
                                       escott@ftc.gov; (312) 960-5609
                                       JAMES H. DAVIS, Special Bar No. A5502004
                                       jdavis@ftc.gov; (312) 960-5611
                                       JOANNIE WEI, Special Bar No. A5502492
                                       jwei@ftc.gov; (312) 960- 5607

                                       Federal Trade Commission
                                       230 S. Dearborn Street, Suite 3030
                                       Chicago, Illinois  60604
                                       Telephone:  (312) 960-5634
                                       Facsimile: (312) 960-5600

                                       Attorneys for Plaintiff
                                       FEDERAL TRADE COMMISSION

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on this May 13, 2019, by the Notice of Electronic Filing, and was electronically filed with the Court via the CM/ECF system, which generates a notice of filing to all counsel of record.

*/s/ James Davis*
JAMES DAVIS,
Special Bar No. A5502004