UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>   Plaintiff,<br><br>vs.<br><br>SIMPLE HEALTH PLANS LLC, a Florida limited liability company, et al.,<br><br>   Defendants. | **Case No.: 18-cv-62593-DPG** |

**Plaintiff Federal Trade Commission's Opposition to Defendant Steven Dorfman's Expedited Motion to Stay the Proceeding Pending Resolution of the Appeal**

## I. Introduction

Defendant Steven Dorfman ("Dorfman") is the mastermind of a "classic bait and switch scheme" that has defrauded consumers nationwide of at least $180 million dollars. (D.E. 139 at 1.) After months of delay tactics, on April 16, 2019, Dorfman was required to face and defend against the FTC's extensive evidence of his wrongdoing. The Court found against him, holding in its May 14, 2019 Order that the evidence "supports a preliminary finding that Defendants devised a fraudulent scheme to use consumer funds to enrich themselves." (*Id*. at 24.) Accordingly, the Court entered a Preliminary Injunction against Dorfman and the Corporate Defendants, all of which Dorfman owns and controls. In doing so, the Court not only noted that the FTC's evidence of Dorfman's illegal conduct is strong and "well-documented," but the Court also again rejected Dorfman's legal argument that the FTC is not entitled to obtain equitable monetary relief from Defendants. Within hours of entry of the Preliminary Injunction, Dorfman filed a Notice of Appeal to the Eleventh Circuit Court of Appeals. (D.E. 140.) As he did after

1

filing his premature – and ultimately dismissed[1] – appeal in March, Dorfman now asks the Court to stay these proceedings during the pendency of the appeal.[2] This motion is based on virtually the same arguments rejected by the Court in Dorfman's first stay motion. These arguments are no more compelling now than when Dorfman first raised them. The Court again should deny Dorfman's Motion to Stay.[3]

There is no justification for granting either a full or partial stay of this case pending resolution of Dorfman's appeal. As Dorfman himself acknowledges, one of the requirements for a stay is that he must demonstrate a likelihood of prevailing on the merits of his appeal—an exceedingly *unlikely* prospect here. Dorfman's argument that the FTC may not obtain monetary redress for consumers would require a panel of the Eleventh Circuit to overturn decades of settled circuit precedent and deviate from every other appellate court to have ruled on this issue.

Dorfman's attempt to address the other factors relevant to weighing the merits of a stay are equally unpersuasive. While Dorfman complains of litigation costs he will incur if the litigation proceeds, that is not a cognizable injury for this inquiry. The notion that the FTC's Motion Authorizing Notification of Existing Customers ("Notification Motion") (D.E. 144) somehow compounds his injury is baseless.[4] The sole purpose of the Notification Motion is to *stop the ongoing harm* by notifying consumers who are still paying for the products they purchased from Defendants that they did not purchase comprehensive health insurance, and to inform them that they are eligible for a special enrollment period to apply for comprehensive coverage. In most cases, entry of a TRO or Preliminary Injunction that enjoins ongoing

---

[1] On April 16, 2019, the Eleventh Circuit dismissed Dorfman's premature appeal for lack of jurisdiction. (D.E. 129.)
[2] Dorfman's first Motion to Stay Pending Appeal is at D.E. 94.
[3] D.E. 100, Paperless Order denying motion to stay.
[4] Dorfman claims that he will suffer "astronomical, irreversible" (D.E. 145, n.1) damage because of the proposed notice process but offers no support for this hyperbole.

2

deceptive conduct would result in an immediate cessation of ongoing services to consumers along with the concomitant revenue stream to the defendants. The only reason an affirmative notice and opt-in process is required here is because a third party other than Defendants independently controls the payment process. That party fully supports the FTC's Notification Motion to ensure consumers know what they are paying for.

With regard to the public interest, there is no question that proceeding with this litigation will allow for an earlier resolution of the question of liability, and ultimately provide relief to consumers as soon as possible. As the testimony from Chris Mitchell and Elizabeth Belin showed at the April 16 hearing, many of Dorfman's victims have suffered significant economic harm, and any delay in these proceedings is a delay in providing those victims redress and some relief from their crushing debt. Dorfman already has significantly delayed these proceedings, and he should not be permitted to delay them further.

Dorfman is wrong that his appeal divests the Court of jurisdiction over this matter. The issues raised in his notice of appeal are narrow, and do not affect the Court's ability to adjudicate central issues in this litigation. Dorfman has not challenged the FTC's authority to obtain injunctive relief to halt his illegal conduct, for example. Even if the Eleventh Circuit had jurisdiction over the validity of the asset freeze, this Court may still consider and rule on (1) the Commission's allegations that Dorfman's practices violated the law and (2) the propriety of a permanent injunction against similar misdeeds without impacting the Eleventh Circuit's proceedings at all. Discovery on these topics will also be required no matter what transpires in Dorfman's appeal.[5]

## II.   The Court Should Deny Dorfman's Motion to Stay

---

[5] Proceeding with discovery is especially important, given that evidence in the control of non-parties could be at risk of destruction.

### a. Dorfman Has Failed to Establish Any Basis to Stay the Proceeding.

The Eleventh Circuit has described a stay pending appeal as an "extraordinary remedy." *Garcia-Mir v. Meese*, 781 F.2d 1450, 1455 (11th Cir. 1986). The movant bears a "heavy burden" to show he is entitled to this relief. *Jaffe v. Bank of Am., N.A.*, 667 F. Supp. 2d 1299, 1323 (S.D. Fla. 2009) (quoting *Winston Salem/Forsyth Cnty. Bd. of Educ. v. Scott*, 404 U.S. 1221, 1231 (1971)). Dorfman has failed to establish that a stay is warranted. Courts consider four factors when determining whether to issue a stay pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *Garcia-Mir*, 781 F.2d at 1453. The Eleventh Circuit has held that the first factor is ordinarily "the most important" and requires a determination that the Court's Order was "clearly erroneous." *Garcia-Mir*, 781 F.2d at 1453 (citing *In re Grand Jury Proceedings*, 689 F.2d 1351, 1353 (1982)). Alternatively, the movant may succeed "upon a lesser showing of a 'substantial case on the merits' when 'the balance of the equities [identified in factors 2, 3, and 4] weighs heavily in favor of granting the stay.'" *Id*. (quoting *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981)). Dorfman does not even attempt to argue that the Court's ruling was clearly erroneous. Because prevailing law and the equities are squarely against him, the Court should deny his motion.

### i. Dorfman's argument on appeal directly contradicts decades of settled Eleventh Circuit law and has no chance of success on the merits.

The Court's entry of the Preliminary Injunction is firmly grounded in Eleventh Circuit precedent. As discussed at length in the FTC's opposition to Dorfman's Motion to Strike the TRO (D.E. 81), the Eleventh Circuit and every other circuit that has considered the question

4

(nine in all) have affirmed the FTC's authority to obtain equitable monetary relief in actions brought pursuant to Section 13(b) of the FTC Act.  *See FTC v. Gem Merch. Corp.*, 87 F.3d 466, 468-70 (11th Cir. 1996); *FTC v. Commerce Planet, Inc.,* 815 F.3d 593, 598-99 (9th Cir. 2016)*; FTC v. Ross,* 743 F.3d 886, 890-92 (4th Cir. 2014); *FTC v. Bronson Partners*, LLC, 654 F.3d 359, 365 (2d Cir. 2011); *FTC v. Magazine Sols., LLC,* 432 F. App'x 155, 158 n.2 (3d Cir. 2011) (unpublished); *FTC v. Direct Mktg. Concepts, Inc*., 624 F.3d 1, 15 (1st Cir. 2010*); FTC v. Freecom Commc'ms, Inc*., 401 F.3d 1192, 1202 n.6 (10th Cir. 2005*); FTC v. Security Rare Coin & Bullion Corp*., 931 F.2d 1312, 1314-1315 (8th Cir. 1991); *FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564, 571-72 (7th Cir. 1989).  As this Court found in granting the Preliminary Injunction, "neither the Supreme Court nor the Eleventh Circuit held that disgorgement and restitution are legal monetary remedies not available to the … FTC."  (D.E. 139 at 14.)  Simply put, "Dorfman's position is untenable."  (*Id*.)

Even Dorfman has acknowledged that the weight of authority is against him and that his argument is "novel." (D.E. 145 at 6.)  But he is wrong that this issue is in any way "complex." (*Id*.)  To the contrary, the controlling law could not be clearer, and staying this proceeding indefinitely to enable Dorfman to ask the Eleventh Circuit to overturn decades of precedent based on a "novel" theory is simply not justified.[6]

### ii. Dorfman will not suffer irreparable damage absent a stay.

Dorfman has not identified an irreparable injury that he will suffer if the Court does not enter a stay.  Although he complains about the cost of defending against the FTC's claims, "litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." *FTC v. Standard Oil Co. of Cal*., 449 U.S. 232, 244 (1980).  Dorfman also argues that

---

[6] As the Court noted in the Preliminary Injunction, in the context of a Lanham Act claim, the Eleventh Circuit recently reiterated its position that "disgorgement is an equitable remedy."  *Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1358 (11th Cir. 2019).

he could suffer irreparable damage if the Receiver liquidates "all of the Defendants' assets so that they can be distributed to U.S. Treasury, the Defendants' customers, and other entities." (D.E. 145 at 6.)  However, distribution of funds to injured consumers would only occur under the authority of a final order, not the Preliminary Injunction.  The likelihood that the parties will proceed through discovery, dispositive motions, and possibly trial to reach a final resolution before the Eleventh Circuit can consider Dorfman's appeal is quite unlikely.[7]

Dorfman's argument that he is substantially prejudiced by the FTC's recently-filed Notification Motion (D.E. 144) is baseless and does not support staying this proceeding. Dorfman is not entitled to the preservation of an ongoing revenue stream generated by sales that the Court has preliminarily determined were "aided by rigged internet searches, deceptive sales scripts, and predatory practice."  (D.E. 139 at 1.)  It would be completely inconsistent with the Preliminary Injunction to allow such charges to continue without a consumer's affirmative and informed consent.  As the Court found, consumers who purchased the "practically worthless limited indemnity or discount plans" from Defendants thinking they bought comprehensive health insurance are at risk of "inadequate healthcare" or "devastating medical bills."  (D.E. 139 at 1).[8]  Critically, the proposed notice submitted by the FTC would clearly inform consumers that they do not have comprehensive health insurance, which many consumers do not know and will not discover until it is too late.  The notice also would inform those consumers of the availability

---

[7] In 2018, the median time of disposition between filing of a notice of appeal and decision in the Eleventh Circuit was 7.6 months, while the median time from filing to trial for matters filed in the Southern District of Florida was 17.9 months.  *See Federal Court Management Statistics, Dec. 2018*, https://www.uscourts.gov/sites/default/files/fcms_na_distprofile1231.2018.pdf at 92 and https://www.uscourts.gov/sites/default/files/fcms_na_appsumary1231.2018.pdf

[8] Dorfman claims that the Notification Motion will prejudice him because it may result in the cancellation of the plans of "long-time customers who are satisfied with their health insurance plans." (D.E. 145 at 7) Dorfman, of course, fails to cite to evidence of a single purportedly satisfied consumer.  To the contrary, as the Court has found, the record is "replete" with evidence of Defendants' systematic deception of thousands of consumers.  (D.E. 139 at 5-9)  Of course, any customers "who are satisfied with their health insurance plans" have the option of retaining them.

of a Special Enrollment Period opened by the Center for Medicare and Medicaid Services specifically to allow those consumers to obtain comprehensive, ACA-approved health insurance. (D.E. 144-1 at 7-8.)  The standard open enrollment period does not begin until late fall, and so consumers otherwise would not be able to apply for such insurance at this time.

Dorfman's suggestion that the Notification Motion is designed to engineer evidence in support of the FTC's action against him is wholly unsupported, but sadly typical of his *ad hominem* attacks against the FTC, counsel, and its mission.  The FTC seeks only to effectuate the Court's Preliminary Injunction, protect consumers from ongoing harm, and give consumers an opportunity to make a fully-informed decision about their health insurance.  The Receiver, whose appointment the Court ruled is necessary to "prevent further fraudulent practices during the pendency of the preliminary injunction," (D.E. 139 at 24) fully supports the relief sought by the FTC.  Third party Health Insurance Innovations, which handles the billing of consumers who purchased from Defendants, indicated that "it, too, has an interest in educating consumers about the actual terms of the purchased plans and ensuring that consumers continue to pay only after they know precisely what they are paying for."  (D.E. 144 at 3.)  Dorfman cannot justify staying this action by claiming an irreparable injury from the loss of fraud-induced commissions.

### iii. The FTC and the public interest will suffer irreparable damage if this case is stayed.

The FTC's interest and the public interest are one in the same.  One of the FTC's core missions is to protect consumers from fraud, and in filing this case, the FTC's goal is to stop Defendants' fraud and to return as much money as possible to Dorfman's victims.  As demonstrated by the FTC, the fraud in this case is especially vast and egregious.  It is difficult to overstate the devastating and irreparable impact Dorfman's scam has had and continues to have on its victims.  As the Court noted in its Preliminary Injunction ruling, the FTC has presented

well-documented evidence that Defendants deceived consumers into purchasing what they believed was comprehensive health insurance, and that consumers often do not discover the truth about what they purchased until they try to use their plan, at which point it typically is too late. As evidenced by the testimony of two of Dorfman's victims at the April 16 hearing, Dorfman's fraud has caused consumers to be left with "inadequate health coverage and devastating medical bills." (D.E. 139 at 1.) Many of these consumers will continue to pay monthly premiums for Defendants' deceptively sold plans unless the Court proceeds to consider and to grant the FTC's Notification Motion. Rather than underscoring the need to stay the proceedings, as Dorfman argues, the FTC's Notification Motion makes plain that this case should proceed and the Court should not allow additional consumer injury to accrue during the time that Dorfman takes an unsuccessful appeal of the Preliminary Injunction.

Moreover, every day of delay in this case unnecessarily depletes the funds that will be available to consumer victims at the end of the litigation. Until a permanent injunction is entered, Dorfman continues to receive $5,000 every month from the frozen funds for his living expenses. (D.E. 48). At the time of filing, the total assets frozen in the Receivership estate and Dorfman's accounts totaled only approximately $3.1 million, which is a miniscule fraction of the total financial injury consumers suffered.[9] (D.E. 139 at 11.) Of course, that amount has already been depleted in the ensuing months. Defendants earned at least $180 million in commissions alone from their deceptive scheme; there is no question consumers suffered hundreds of millions more in harm.

Dorfman's callous argument that the public interest favors a stay is consistent with his business practices, showing little regard for the harm he has done to consumers. Each day of

---

[9] This amount does not include the commission payments made by HII since entry of the TRO and held in trust by the Receiver.

delay represents a depletion of the assets ultimately available to redress those harms. This factor clearly supports moving forward with these proceedings.

### b. Dorfman's Appeal Does Not Divest the Court of Jurisdiction

The Court has not been divested of jurisdiction over this matter. As the Court ruled in rejecting Dorfman's previous motion to stay pending appeal, the issues identified by Dorfman in his interlocutory appeal are narrow and do not deprive this Court of jurisdiction over the central allegations in the Commission's complaint. (D.E. 100.) As the Eleventh Circuit has held, "an interlocutory appeal does not completely divest the district court of jurisdiction. The district court has authority to proceed forward with portions of the case not related to the claims on appeal . . . ." *Green Leaf Nursery v. E.I. DuPont De Nemours and Co.*, 341 F.3d 1292, 1309 (11th Cir. 2003) (*citing May v. Sheahan*, 226 F.3d 876, 880 n.2 (7th Cir. 2000)). The issues Dorfman raises in his appeal relate only to the FTC's authority to seek a limited set of remedies. Dorfman already has filed his merits brief in the Eleventh Circuit and it does not contest the Court's factual findings in the Preliminary Injunction or the FTC's authority to seek a preliminary or permanent injunction that prohibits Defendants from engaging in unlawful conduct in violation of the FTC Act and the Telemarketing Sales Rule. The Court undoubtedly retains its jurisdiction over any dispute about whether such relief is warranted here, particularly given that the other six defendants have not appeared at all. As such, the Court retains jurisdiction over the FTC's Notification Motion, which seeks to halt ongoing consumer harm. The factual underpinnings of this matter must be litigated regardless of the outcome of the questions raised in Dorfman's interlocutory appeal. The Eleventh Circuit can still consider the issues on appeal while this Court simultaneously proceeds with the litigation without any concern over inconsistent outcomes.

**III.     Conclusion**

For the reasons discussed above, the FTC requests that the Court deny Dorfman's Motion to Stay.

Dated:  May 28, 2019                          Respectfully submitted,

ALDEN F. ABBOTT
General Counsel

*/s/Elizabeth C. Scott*
ELIZABETH C. SCOTT, Special Bar No. A5501502
escott@ftc.gov; (312) 960-5609
JAMES H. DAVIS, Special Bar No. A5502004
jdavis@ftc.gov; (312) 960-5611
JOANNIE WEI, Special Bar No. A5502492
jwei@ftc.gov; (312) 960- 5607

Federal Trade Commission
230 S. Dearborn Street, Suite 3030
Chicago, Illinois  60604
Telephone:  (312) 960-5634
Facsimile: (312) 960-5600

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on May 28, 2019, by the Notice of Electronic Filing, and was electronically filed with the Court via the CM/ECF system, which generates a notice of filing to all counsel of record.

*/s/ Elizabeth C. Scott*
Elizabeth C. Scott (SBA # A5501502)