UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,**<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>**SIMPLE HEALTH PLANS LLC, et al.,**<br><br>　　　　Defendants. | **Case No.: 18-cv-62593-DPG** |

**DEFENDANT STEVEN DORFMAN'S RESPONSE IN OPPOSITION TO
PLAINTIFF FEDERAL TRADE COMMISSION'S MOTION SEEKING
AUTHORITY TO ISSUE DEFICIENT NOTIFICATIONS TO CONSUMERS**

Defendant, Steve Dorfman ("**Dorfman**"), through undersigned counsel, files this response in opposition to the *Motion Authorizing Notification of Existing Customers About Deceptively Sold Plans and Opportunity to Obtain Comprehensive Health Insurance* (the "**Notification Motion**") [DE 144] filed by Plaintiff, the Federal Trade Commission (the "**FTC**"), and states:

By the Notification Motion, the FTC seeks unprecedented Court authority to send *pre-trial* notices informing tens of thousands of non-party witnesses that the Court has already determined that the core allegations in the Complaint are true. The FTC then doubles down on that draconian request by asking this Court to grant final relief, sought in paragraphs 69(A) and (C) of the Complaint,[1] by cancelling tens of thousands of otherwise binding contracts between and among

---

[1] On May 14, 2019, Defendant Steven Dorfman filed a notice of appeal challenging the statutory authority of the FTC to seek (and the authority of this District Court to grant) the forms of final relief sought in this motion. On May 24, 2019, Mr. Dorfman filed a comprehensive appellate brief arguing, among other things, that the asset freeze, the receivership, and other penalties imposed by the preliminary injunction order or the temporary restraining order violate Mr. Dorfman's right to a jury trial guaranteed by the 7th Amendment to the United States Constitution. *See Dorfman v. FTC,* Case No. 19-11932 (11th Cir. May 14, 2019). Each of the legal arguments set forth in the May 24, 2019 appellate brief are expressly incorporated into this response by reference.

1

those consumer-witnesses and various companies that are not parties[2] to this case (collectively, the "**Notification Procedure**").

The Notification Motion must be denied for any of a number of independent reasons, including: (i) the FTC lacks the statutory authority to obtain the relief sought in the Notification Motion; (ii) this Court lacks the authority to grant the relief sought in the Notification Motion; (iii) the Notification Motion is a thinly-veiled effort by the FTC to convert the preliminary injunction entered into a permanent injunction and obtain final relief without having to meet its burden at a constitutionally guaranteed trial; (iv) the proposed notice procedure will improperly taint tens of thousands of key witnesses by employing the credibility of this Court to improperly influence factual conclusions that the FTC bears the burden to prove with *competent* evidence; and (v) the proposed negative notice contingency will result in tens of thousands of individuals having their private health insurance and other contractual products cancelled by the United States government without those individuals' knowledge or consent.

The Notification Motion must be denied because the FTC lacks the authority to obtain the relief requested in the Notification Motion. Indeed, the FTC failed to cite any authority to support that it may create a mechanism to automatically cancel a consumer's health insurance without a consumer's request, let alone express consent. Further, there does not appear to be anything in the FTC Act that authorizes the FTC to obtain such relief. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("It is axiomatic that an administrative agency's power . . . is limited to the authority delegated by Congress."). Additionally, due to the Court's limited equitable jurisdiction in this case, the Court should reject the FTC's predictable invitation that the Court rely on its "unlimited equitable powers" to authorize the Notification Procedure. The Supreme Court

---

[2] No defendant in this proceeding is a signatory to any of the contracts that the FTC seeks to "cancel."

has instructed that it would be reversible error for the Court to do so. *See Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 487-88 (1996) ("where Congress has provided 'elaborate enforcement provisions . . . it cannot be assumed that Congress intended to authorize by implication additional judicial remedies . . ." and "it is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be wary of reading others into it."); *see also, U.S. v. Apex Oil Co,* 579 F.3d 734, 737 (7th Cir. 2009) (finding that courts' broad interpretation of their equitable powers "are dead after *Meghrig*"). On this basis alone, the Notification Motion must be denied.

The Notification Motion must also be denied because it seeks to convert the *preliminary* nature of the injunction order entered against the Defendants into a *permanent* injunction. The FTC initiated this proceeding against the Defendants seeking, among other forms of relief, rescission of the insurance contracts that it now seeks to have automatically cancelled through the Notification Procedure. If the Notification Motion is granted, the FTC would be allowed to obtain final relief that is not authorized by Section 13(b) without having to meet the burdens of a constitutionally required jury trial. This will result in permanent damage to Mr. Dorfman before the 11th Circuit has decided the pending challenge to the FTC's authority to bring these claims in this Court and before a jury has determined that there is a factual basis for those claims. The Court should reject the FTC's efforts to short-circuit the Defendants' due process rights by granting the FTC the final relief sought in the Notification Motion.

Even if the Court determines that the FTC can seek and obtain the form of relief sought in the Notification Motion, the Court must deny the Notification Motion because the Notification Procedure is critically flawed and, if approved, will result in tens of thousands of consumers being left uninsured, without their knowledge. As designed, the Notification Procedure has set a default

that consumers will automatically have their insurance cancelled unless they proactively take steps to reaffirm their desire to keep their insurance. This procedure is defective for multiple reasons. <u>First</u>, there is no assurance that the consumer actually receives the notice. <u>Second</u>, there is no assurance that the consumer actually reads and reviews the notice. <u>Third</u>, there is no assurance that the consumer actually understands the notice or procedure—an exceedingly galling shortcoming, considering that the FTC's case against the Defendants is primarily premised on the consumers' alleged failure to appreciate their decisions to purchase insurance. These procedural and notice defects are particularly concerning because the proposed default provision in the Notification Procedure is that the consumers' insurance will be automatically cancelled unless they opt-in to keep their insurance. Accordingly, ***the proposed Notification Procedure will cause tens of thousands of consumers to have their insurance plans cancelled, without their knowledge or any assurance that they received, read, and understood the notices and leave them uninsured***. The FTC's proposed process will expose tens of thousands of unwitting consumers to catastrophic health and other medical-related financial liabilities that far-exceed what consumers would otherwise have incurred had their insurance plans not been cancelled. The Court should not let the FTC's irresponsible, unethical, and ill-conceived notions put consumers in such an untenable position.

The proposed Notification Procedure is also flawed because it misleadingly and presumptuously informs consumers that they have been deceived and misled into believing that they have comprehensive health insurance. These "official" notices will influence the consumer-witnesses' impression of the nature of the health insurance they purchased from Defendant Simple Health, convincing otherwise satisfied consumers that their insurance plans and ancillary products are defective or fraudulent. Given the negative notice aspect of the proposed procedure, tens of

thousands of consumers will have their private health insurance unilaterally cancelled by a government agency. In the event that the FTC is able to establish some form of liability in this case, the FTC and other government and non-government entities will improperly rely on the number of, and value of, unilaterally cancelled policies to suggest inflated damages in this or other parallel other cases. In this way, the Notification Procedure is a self-fulfilling mechanism to cause plan cancelations that the FTC (and other parties) will thereafter misuse as evidence of the misconduct alleged in this case. The Court should not tolerate such gamesmanship.

It bears repeating as the consequences of granting the FTC's requested relief are grave: tens of thousands of consumers will be left uninsured, without their knowledge, exposing them to untold health and medical liabilities. The Court should not act to guarantee that result.

**WHEREFORE**, Defendant, Steven Dorfman, respectfully requests an Order of the Court, denying the Notification Motion and for all further relief that the Court deems just and proper.

Dated: June 3, 2019                                **DLA Piper LLP (US)**

                                                           */s/ Ryan D. O'Quinn*
Ryan D. O'Quinn (FBN 513857)
*ryan.oquinn@dlapiper.com*
Elan A. Gershoni (FBN 95969)
*elan.gershoni@dlapiper.com*
200 South Biscayne Boulevard
Suite 2500
Miami, Florida 33131
Telephone: 305.423.8553
Facsimile: 305.675.7885

*Counsel for Defendant
Steven Dorfman*

5

## CERTIFICATE OF SERVICE

The undersigned certifies that he filed this pleading through the court's electronic filing system on June 3, 2019 and that all parties requesting electronic notice of pleadings have been served with the pleading.

>*/s/ Ryan D. O'Quinn*
>Ryan D. O'Quinn