## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 18-cv-62593-DPG

FEDERAL TRADE COMMISSION,

      Plaintiff,

vs.

SIMPLE HEALTH PLANS, LLC, et al.,

      Defendants.

_____/

### RECEIVER'S MOTION FOR AUTHORITY TO ENTER INTO INFORMATION TECHNOLOGY ASSET DISPOSITION SERVICES AGREEMENT WITH GREEN OWL TECH RECYCLING, INC.

Michael I. Goldberg, as court-appointed receiver (the "Receiver") over defendants Simple Health Plans LLC, Health Benefits One LLC, Health Center Management LLC, Innovative Customer Care LLC, Simple Insurance Leads LLC, Senior Benefits One LLC, and their subsidiaries, affiliates, successors and assigns (collectively, the "Receivership Entities") hereby moves this Court for entry of an Order authorizing the Receiver to enter into an Information Technology Asset Disposition Services Agreement with Green Owl Tech Recycling, Inc. (the "Motion"). In support of this Motion, the Receiver states as follows:

### FACTUAL BACKGROUND

1.      Michael Goldberg is the court-appointed Receiver over the Receivership Entities pursuant to the *Ex Parte* Temporary Restraining Order with Asset Freeze, Appointment of a Temporary Receiver, and Other Equitable Relief, and Order to Show Cause Why a Preliminary Injunction Should Not Issue (the "TRO"), dated October 31, 2018 [ECF No. 15] and the Preliminary Injunction, dated May 14, 2019 [ECF No. 139].

2.     Pursuant to the Preliminary Injunction, the Receiver is directed and authorized to assume full control of the Receivership Entities; take excusive custody, control and possession of all assets and documents of or in the possession, custody or under the control of any Receivership Entity, including assets the Receiver has a reasonable basis to believe were purchased using funds from any Receivership Entity's corporate accounts. *See* Preliminary Injunction at page 33.

3.     Moreover, the Preliminary Injunction authorizes the Receiver to "enter into and cancel contracts and purchase insurance as advisable or necessary." *See* Preliminary Injunction at page 36.

4.     As of the date of the Receiver's initial appointment, one or more the Receivership Entities were parties to commercial real property leases. On June 11, 2019, the Court entered an Order [ECF No. 161] authorizing the Receiver to cancel certain of those Leases including the lease for the premises located at 8400 N.W. 36th Street, Miami, Florida, where the Receivership Entities had operated a call center (the "Miami Premises"). The Receivership Entities operated a call center out of the Miami Premises.

5.     On August 5, 2019, the Court entered an Order [ECF No. 195] authorizing the Receiver to cancel the lease for the premises located at 2 Oakwood Boulevard, Suite 100, Hollywood, Florida  (the "Hollywood Premises") where the Receivership Entities maintained their corporate offices and operated another call center. The cancellation of the Lease for the Hollywood Premises is effective upon completion of an auction of various office furniture and equipment located at the Hollywood Premises. The auction is scheduled to take place on September 16, 2019.

49913272;2

6.      Prior to the cancelation of the lease for the Miami Premises, Receiver relocated the computers and servers from the Miami Premises to the Hollywood Premises. Together with the servers and computers located at the Hollywood Premises, there are more than 200 pieces of equipment, along with loose hard disk drives ("HDD") (collectively, the "Electronics") currently stored at the Hollywood Premises.

7.      Green Owl Tech Recycling, Inc. ("Green Owl") is a business that offers a responsible recycling program for electronics and miscellaneous e-waste in conformance with the SERI-R2 Standard[1], as well as refurbishing and re-marketing electronics for sale.

8.      The Receiver and Green Owl have negotiated an Information Technology Asset Disposition Services Agreement (the "Agreement") for the disposition of the Electronics. A copy of the Agreement is attached hereto as Exhibit "A".

9.      Pursuant to the Agreement, Green Owl will provide the following services:

(a)      Green Owl will pick up and transport the Electronics from the Hollywood Premise and store the Electronics at its secured processing facility;

(b)      Green Owl will capture and provide an audit report to the Receiver containing the Make, Model, Serial Number, Key Functionality, Core Functionality, Cosmetic Notes, Cosmetic Grade, and determine the Market Value for all Electronics.

(c)      For all Electronics that are deemed marketable, Green Owl will remove all hard disk drives from the Electronics, store the originals in a secured cage with 24/7 video

---

[1] Sustainable Electronics Recycling International ("SERI") is a nonprofit organization dedicated to advancing safe and sustainable reuse and recycling of used electronics through consensus-driven standards. The R2 Standard is the leading certification for electronics repair and reuse.

recording for a period of 24 months or until further directed by the Receiver[2] and refurbish, sanitize and remarket the Electronics for sale.

        (d)     Green Owl and the Receiver will share the revenue derived from the sale of all remarketed Electronics with each party receiving 50% of the sale proceeds, net of the refurbishing costs, and

        (e)     At no time will any data bearing device or HDD be destroyed by Green Owl without the express written consent of the Receiver.

        (f)     Green Owl will responsibly recycle Electronics that are too costly to refurbish only after approval by the Receiver.

## MEMORANDUM OF LAW

The scope of a receiver's authority is established by the granting court. *See SEC v. Manor Nursing Centers Inc.*, 458 F.2d 1082, 1105 (2nd Cir. 1973). The Preliminary Injunction directs and authorizes the Receiver to (i) take exclusive custody, control, and possession of all documents in the possession, custody, or under the control of, any Receivership Entity; (ii) hold, manage, and prevent the loss of all documents of the Receivership Entities; and (iii) perform all acts necessary or advisable to preserve such documents, including all documents that are accessible via electronic means. *See* Section XII, Preliminary Injunction, at pages 33 – 34. Here, the Receiver has taken control over the servers and computers that hold electronic files.

The Preliminary Injunction also directs and authorizes the Receiver to enter into and cancel contracts. *Id.* at page 36. The Agreement will allow the Receiver to maintain the information stored on the hard drives and the servers without keeping the Electronics, which will reduce the costs of storage. Moreover, the Receivership Entities and their creditors will benefit

---

[2] After the 24 month period, Green Owl and the Receiver will agree on new terms for securing the data as may be needed.

from the receivership estates' receipt of 50% of the proceeds of the sale of the sanitized and refurbished Electronics. A district court has broad powers and wide discretion to determine relief in an equity receivership. *SEC v. Elliott*, 953 F.2d 1560, 1569–70 (11th Cir. 1992).

The Receiver believes it is on the best interest of the Receivership Entities and their creditors for the Court to authorize the Receiver to enter into the Agreement with Green Owl. Information will be maintained and stored, without the need to retain the computers and servers. The receivership estate will benefit from receipt of a portion of the revenue from the sale of refurbished Electronics, while Electronics that cannot be overhauled will be responsibly recycled.

**WHEREFORE**, the Receiver respectfully requests the Court to enter an Order in the form attached hereto as **Exhibit "B"**, approving the relief requested in this motion and to grant such further relief as is just and proper.

## LOCAL RULE 7.1 CERTIFICATION OF COUNSEL

Pursuant to Local Rule 7.1, undersigned counsel hereby certifies that the Receiver's undersigned counsel has conferred with counsel for the Federal Trade Commission and counsel for Steven Dorfman. Counsel for the Federal Trade Commission has no objection to the Motion. However, Steven Dorman objects to the relief requested in the Motion.

Dated: August 29, 2019                    Respectfully submitted,


                                          /s/ Joan Levit
                                          Joan Levit, Esq.
                                          Florida Bar Number: 987530
                                          Email: joan.levit@akerman.com
                                          *Counsel for Receiver*

49913272;2

Michael I. Goldberg, Esq.
Florida Bar Number: 886602
Email: michael.goldberg@akerman.com
*Court-appointed Receiver*

AKERMAN LLP
Las Olas Centre II, Suite 1600
350 East Las Olas Boulevard
Fort Lauderdale, FL 33301-2999
Phone: (954) 463-2700
Fax: (954) 463-2224

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on this August 29, 2019 via the Court's notice of electronic filing on all CM/ECF registered users entitled to notice in this case as indicated on the attached Service List.

By: /s/ Joan M. Levit
Joan M. Levit, Esq.

49913272;2

## SERVICE LIST

**Counsel for Plaintiff Federal Trade Commission**

**Elizabeth C. Scott**
US Federal Trade Commission
Midwest Region
230 S. Dearborn St., Ste 3030
Chicago, IL 60604
Email: escott@ftc.gov

**James Davis**
Federal Trade Commission
55 West Monroe Street, Suite 1825
Chicago, IL 60603
312-960-5611
Email: jdavis@ftc.gov

**Joannie Wei**
Federal Trade Commission
230 South Dearborn Street, Suite 3030
Chicago, IL 60603
(312) 960-5607
Email: jwei@ftc.gov

**Counsel for Court Appointed Receiver**

**Naim Surgeon**
**Gera R. Peoples**
Akerman LLP
Three Brickell City Centre
98 Southeast Seventh Street, Suite 1100
Miami, FL 33131
305-982-5679
305-374-5095 (fax)
naim.surgeon@akerman.com
gera.peoples@akerman.com

**Joan M. Levit**
Akerman LLP
350 East Las Olas Blvd, Suite 1600
Fort Lauderdale, FL 33301
954-463-2700
joan.levit@akerman.com

**Counsel for Defendant Steven J. Dorfman**

**Ryan Dwight O'Quinn**
DLA Piper LLP (US)
200 South Biscayne Boulevard
Suite 2500
Miami, FL 33131
305-423-8553
Fax: 305-675-0807
Email: ryan.oquinn@dlapiper.com

**Elan Abraham Gershoni**
DLA Piper LLP (US)
200 S. Biscayne Boulevard
Suite 2500
Miami, FL 33131
305.423.8500
Fax: 305.675.0527
Email: Elan.Gershoni@dlapiper.com

**Court Appointed Receiver**

**Michael Ira Goldberg**
Akerman LLP
Las Olas Centre
350 E Las Olas Boulevard, Suite 1600
Fort Lauderdale, FL 33301-0006
954-463-2700
463-2224 (fax)
michael.goldberg@akerman.com

49913272;2

**Counsel for American First Finance, Inc.**

**Eric J Silver**
Stearns Weaver Miller Weissler Alhadeff &
Sitterson
150 West Flagler Street, Suite 2200
Miami, FL 33130
(305) 789-4175
esilver@stearnsweaver.com

**Counsel for Amandra Hicks**

**Janelle Alicia Weber**
Law Office of Janelle A. Weber, P.A.
1520 W Cleveland St., Ste. A
Tampa, FL 33606
813-9823663
813-982-3810 (fax)
jweber@janelleweberlaw.com

# **<u>EXHIBIT A</u>**



### IT Asset Disposition (ITAD) Services Agreement

This IT Asset Disposition (ITAD) Services Agreement ("Agreement") is between Green Owl Tech Recycling ("GOTR") and Michael I. Goldberg, in his capacity as receiver of Simple Health Plans LLC, Health Benefits One LLC, Health Center Management LLC, Innovative Customer Care LLC, Simple Insurance Leads LLC, Senior Benefits One LLC, and their subsidiaries, affiliates, successors and assigns (collectively "Customer") and is effective as of the date signed by the last party to the Agreement ("Effective Date").

#### BACKGROUND

WHEREAS, GOTR is a Benefit Corporation organized under the laws of the State of Florida solely to benefit the general public good and the environment; and GOTR offers a Responsible Recycling program for electronics and miscellaneous e-waste that conforms to the SERI-R2 Standard.

WHEREAS, GOTR offers, as an asset disposition business, full-scale services including decommissioning, logistics/transport, auditing, reporting, testing, refurbishing, data sanitization, physical HDD destruction, and re-marketing.

WHEREAS, Customer values the data sanitization process and environmental protection guaranteed by the SERI-R2 Standard as well as the data preservation of certain data, and desires to enter into agreement with a local ITAD services firm that offers re-marketing so Customer may reclaim some value of decommissioned IT equipment.

WHEREAS, Customer and GOTR desire to enter into a full preservation, service recycling, disposition, and management program to preserve, process, dispose, and re-market certain identified IT equipment as identified in the attached Statement of Work ("SOW").

WHEREAS, Customer is the court-appointed receiver in the matter Federal Trade Commission v. Simple Health Plans LLC, et al., Case No.: 18-cv-62593-Gayles, pending in the United States District court for the Southern District of Florida (the "Receivership Court".)

#### AGREEMENT

NOW THEREFORE, in consideration of the mutual promises and covenants contained herein, the parties agree as follows:

1. **SERVICES.** GOTR shall provide "Services" to Customer which shall include the process by which GOTR will perform and/or receive an inventory of Customer Material specifying the time period for inventorying and collection; collection of specific lists of Material to be consolidated and ensure collection and removal of all such Materials within the time period specified from Customer's facilities (as listed in the SOW) for delivery and processing at GOTR's designated facilities; provide a detailed inventory to

Page 1 of 11

49798872;1

Customer according to the Performance Criteria contained in the SOW, the disposition plan for each item (i.e. storage, remarketing or recycling) and the competitive market value for Materials to be resold and/or the costs associated with recycling ("Customer Inventory"); and process Materials by making the best efforts to resell all reusable equipment and/or parts, or by destruction and recycling of unusable Materials, in accordance with all standards set forth by SERI-R2 Standards as well as all applicable federal, State and environmental and legal regulations, laws and ordinances.

In addition, the Services shall include. with respect to equipment being sold, all necessary cleansing and sanitizing of all Material to remove all operating and application software, asset tags, or other physical identification and any data (collectively "Data"), such that no Data can be recovered ("Sanitizing"). Sanitizing shall be, at a minimum, in conformance with the protocols defined in the National Institute of Standards and Technology (NIST) Special Publication 800-88, Rev. 1, Standards for Media Sanitization and any applicable privacy laws or regulations, including but not limited to FACTA, HIPAA, Sarbanes-Oxley and the Gramm-Leach-Bliley Act. Notwithstanding the foregoing, GOTR shall not delete, change or in any way alter any data or information on any hard drive which is being stored.

Material that cannot be remarketed will be domestically recycled by GOTR through its de-manufacturing and/or degaussing and/or shredding process, separating Materials and metals into commodity streams also in compliance with NIST 800-88, Rev. 1 and any applicable privacy laws or regulations such that no Data can be recovered.

2. **MATERIALS**. Material is hereinafter defined to include all forms of electronics, manufacturing equipment, I.T. equipment, telecommunications, medical and laboratory equipment, including but not limited to laptops, desktops/computers, servers, server towers, server racks, network equipment, flat screen monitors, liquid crystal displays (LCDs), telephony, printers, faxes, copiers, toner cartridges, tablets, mobile phones, process control equipment, scanners, batteries, server battery backups, uninterruptible power supplies (UPS), electronics storage media, hard disk drives and all accessories and peripherals for above mentioned equipment.

Material specifically excludes cathode ray tubes also known as CRTs, unless specifically included in the attached SOW, equipment containing radioactive Materials, free flowing liquids or gases, chlorofluorocarbons, polychlorinated biphenyls (PCBs), or other "Hazardous Wastes" as defined in having the meaning ascribed in and listed under 40 CFR §261.3 and other regulations promulgated hereunder, as amended from time to time.

3. **TERM/TERMINATION**. This Agreement will continue in force for one (1) year from the date this Agreement is signed. Either party will have the right to terminate this Agreement at any time by providing ninety (90) days written notice of its intent to terminate to the other party. This agreement will automatically renew itself each year if neither party provides cancellation in writing to the other party involved. The following paragraphs will survive termination or expiration of this Agreement: Paragraphs 6, 7, 8, 9, 10, 11, and 12.

4. **COMPENSATION & PAYMENT TERMS**. Customer will compensate GOTR for services performed under the SOW and billed in accordance with the Agreement. GOTR will invoice Customer each month via email upon acceptance and processing of material in accordance with the Customer ITAD program set forth in the SOW. Customer agrees to pay GOTR in US dollars ($) within 30 days of the date of GOTR's

49798872;1

invoice. Invoiced amounts will be considered final. Customers who pay via ACH, wire, or other electronic means agree to reimburse GOTR for any fees that may be incurred as a result of such payment method. Late payments bear interest at the rate of 1.5% per month, or if less, the highest rate permitted under law, after 30 days have passed from the invoice date. GOTR may suspend activities required under this Agreement if payment is not received within 7 days following late payment notification by GOTR. Additionally, GOTR is entitled to recover any reasonable sums expended in connection with enforcement of this Agreement including but not limited to the collection of amounts not paid when due, including all collection agency fees and attorneys' fees. If parties agree in the SOW to a revenue share on re-marketed IT equipment, then compensation and payment terms on said revenue shall be addressed in the SOW.

5.  **GRANT OF LICENSE/LOGO.**  Should GOTR desire to do so, Customer grants to GOTR a non-exclusive, non-transferable, worldwide, revocable, royalty-free license to reproduce, display, and use Customer's trademarks, service marks and logos on GOTR's website under a section displaying current Customers.  The trademark license granted in this provision will terminate upon the termination or expiration of this Agreement.

6.  **GOTR REPRESENTATIONS AND WARRANTIES.**  In the performance of all Services hereunder, GOTR agrees to comply with all applicable permits, all applicable federal, State, county, and municipal laws, regulations and ordinances and all duly constituted authority, including but not limited to, social security and income tax withholding laws, unemployment compensation laws, privacy laws, environmental, safety and health laws and manifesting requirements.

GOTR has obtained all necessary permits, licenses, zoning and other federal, state or local authorizations required to perform the Services hereunder and, upon the request of Customer, shall furnish copies thereof.

GOTR shall keep and retain adequate books and records and other documentation consistent with and for the periods required by applicable regulatory requirements and guidelines pertaining to performance of the Services required by this Agreement.

During the life of the agreement and in conformance with the SERI-R2 Standard GOTR has developed and will maintain a Focus Material Management Plan which above all requires that all Focus Materials processed by GOTR be delivered by GOTR to a Certified SERI-R2 downstream vendor who has been properly vetted.

GOTR with neither landfill any of Customer's electronics or other equipment delivered to GOTR pursuant to this Agreement, nor with GOTR ship Customer's electronics or other equipment to any location outside the United States.

GOTR is solely responsible for the collection, remittance and reporting of all State, local and other tax related to the sale of any Material transferred from Customer to GOTR pursuant to this Agreement.

GOTR will conform to SERI-R2 and ISO 14001 standards at all times during the term of this Agreement and will adhere to those standards in connection with any work conducted hereunder in connection with Customer's Materials or services.  Additionally, GOTR will seek a third-party auditor to certify conformity with and become certified in the SERI-R2 and ISO 14001 Standard pending the collection of required evidence of conformity.  If at any time GOTR falls out of conformance, is unable to seek certification, or is

49798872.1

denied certification to either the SERI-R2 or the ISO 14001 certifications, GOTR will immediately notify Customer.

7. **CUSTOMER REPRESENTATIONS AND WARRANTIES**. Customer has free and unencumbered title to all Material delivered to GOTR pursuant to this Agreement, and will transfer legal ownership of Material delivered to GOTR pursuant to this Agreement, which will including the removal of any and all known anti-theft, geo-tracking, or bios-lock software installed on the Material. Customer shall not knowingly ship Hazardous Substances to GOTR pursuant to this Agreement. In the event Hazardous Substances are identified upon receipt at GOTR facilities or during subsequent processing, such substances will be quarantined in a manner sufficient to reasonably protect human health and real and personal property. GOTR will notify Customer of identified substances and assist Customer in the resolution and proper disposition of the substances, including lawfully packaging, labeling and disposal. In the event of this occurrence, Customer will be solely responsible for all related costs.

8. **CONFIDENTIAL INFORMATION**. Each party agrees to hold the other's confidential information in confidence and to use it solely for the purposes contemplated herein. Each party agrees it shall apply the same level of confidential treatment to the other party's confidential information as it does to its own confidential information. Without the express written agreement of GOTR or Customer as the case may be, neither party shall disclose the other's confidential information, nor any of its terms to any third party except: (i) as required by law or regulatory process; or (ii) to each party's respective attorneys, accountants, other advisors, officers, directors and shareholders, as applicable (provided, however, that any such third party agrees to be bound by the confidentiality provisions hereof) in order to facilitate the fulfillment of the parties' respective obligations hereunder. Confidential information shall not include information that is at any time: (a) already known to the receiving party at the time it is disclosed; (b) publicly known through no wrongful act of the receiving party; (c) rightfully received from a third party without restriction on disclosure and without breach of this Agreement; (d) independently developed by the receiving party; (e) approved for release by written authorization of the party disclosing the confidential information; (f) furnished by the disclosing party to a third party without written restriction on disclosure.

9. **DISCLAIMER OF WARRANTIES**. OTHER THAN AS EXPRESSLY STATED HEREIN, GOTR MAKES NO WARRANTY, WHETHER EXPRESS OR IMPLIED, AND EXPRESSLY EXCLUDES AND DISCLAIMS ALL OTHER WARRANTIES AND REPRESENTATIONS OF ANY KIND.

10. **INDEMNIFICATION**. Each party agrees to defend, indemnify, and hold harmless (collectively, "Indemnity" or "Indemnification") the other party, its affiliates and all of their officers, directors, agents and employees, for any damages, losses, costs, and expenses, including without limitation reasonable attorney and expert witness fees arising out of or related to such party's (a) negligence or intentional misconduct, (b) violation of applicable law or (c) breach of any provision of this Agreement. If any third-party claim is commenced against a person or entity entitled to indemnification under this Section, notice thereof shall be given to the party that is obligated to provide indemnification (the "Indemnifying Party") as promptly as practicable. If, after such notice, the Indemnifying Party shall acknowledge that this Agreement applies with respect to such claim, then the Indemnifying Party shall be entitled, if it so elects, in a notice promptly delivered to the Indemnified Party, but in no event less than 15 business days prior to the date on which a response to such claim is due, to immediately take control of the defense and investigation of such claim and to employ and engage attorneys reasonably acceptable to the Indemnified Party to handle and defend the same, at the Indemnifying Party's sole cost and expense. The Indemnified

49798872;1

Party shall cooperate, at the cost of the Indemnifying Party, in all reasonable respects with the Indemnifying Party and its attorneys in the investigation, trial and defense of such claim and any appeal arising therefrom; provided, however, that the Indemnified Party may, at its own cost and expense, participate, through its attorneys or otherwise, in such investigation, trial and defense of such claim and any appeal arising therefrom. No settlement of a claim that involves a remedy other than the payment of money by the Indemnifying Party shall be entered into without the consent of the Indemnified Party. After notice by the Indemnifying Party to the Indemnified Party of its election to assume full control of the defense of any such claim, the Indemnifying Party shall not be liable to the Indemnified Party for any legal expenses incurred thereafter by such Indemnified Party in connection with the defense of that claim. If the Indemnifying Party does not assume full control over the defense of a claim subject to such defense as provided in this Section, the Indemnifying Party may participate in such defense, at its sole cost and expense, and the Indemnified Party shall have the right to defend the claim in such manner as it may deem appropriate, at the cost and expense of the Indemnifying Party

11. **LIMITATION OF LIABILITY.** IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER PARTY OR ANY OTHER PERSON FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL OR PUNITIVE DAMAGES, INCLUDING LOSS OF PROFIT OR GOODWILL, FOR ANY MATTER ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ITS SUBJECT MATTER, WHETHER SUCH LIABILITY IS ASSERTED ON THE BASIS OF CONTRACT, TORT OR OTHERWISE EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. GOTR'S LIABILITY UNDER THIS AGREEMENT IS LIMITED TO THE AMOUNT OF FEES PAID BY CUSTOMER TO GOTR FOR SERVICES HEREUNDER IN THE TWELVE (12) MONTH PERIOD IMMEDIATELY PRIOR TO THE DATE A CLAIM IS RAISED HEREUNDER. THE FOREGOING LIMITATIONS APPLY TO ALL CAUSES OF ACTION IN THE AGGREGATE, INCLUDING WITHOUT LIMITATION TO BREACH OF CONTRACT, BREACH OF WARRANTY, NEGLIGENCE, STRICT LIABILITY, MISREPRESENTATIONS, AND OTHER TORTS.

12. **INSURANCE.** GOTR shall procure and maintain in full force and effect throughout the term of this agreement the following insurance: (a) Workers' Compensation and Employer's Liability Insurance covering injury to or occupational disease or death of the employees of GOTR who perform Services hereunder, in accordance with applicable statutory requirements and limits with respect to Workers' Compensation and subject to minimum limits of $1,000,000 per accident or per employee and policy limit for disease with respect to Employer's Liability; (b) Commercial General Liability Insurance subject to minimum limits of $1,000,000 per occurrence and $5,000,000 annual aggregate; (c) Commercial Automobile Liability Insurance subject to a minimum limit of $500,000 combined single limit per accident, and, (d) Professional Liability Insurance subject to minimum limits of $2,000,000 per occurrence and $2,000,000 combined single limit per occurrence. Customer shall be named as additional insureds with respect to GOTR's provision of Services under each of the policies required under (b) through (d) above.

13. **GOVERNING LAW / VENUE.** This Agreement shall be interpreted in accordance with and governed by the law of the State of Florida without regard to conflict of laws principles. The venue for any dispute between the Parties shall be the Receivership Court.

14. **NOTICES.** All notices and other communications required hereunder by either party to the other shall be in writing, delivered personally, by certified or registered mail, return receipt requested, or by overnight courier, and shall be deemed to have been duly given when delivered personally or received when using overnight courier or three business days after being deposited in the United States mail, postage prepaid, addressed as follows:

49798872;1

If to Green Owl Tech Recycling:

Green Owl Tech Recycling
1621 SW 5th Court
Pompano Beach, FL 33069

Attn: Brian Ouellette

with a copy to (which shall not constitute notice):

Kalpesh Patel, Esq.
c/o FLPatel Law, PLLC
360 Central Avenue, Suite 800
Saint Petersberg, FL 33701

If to Customer:

Akerman LLP
350 East Las Olas Boulevard, Suite 1600
Ft. Lauderdale, FL 33301

Attn: Michael I. Goldberg, Receiver

15. **RELATIONSHIP OF THE PARTIES**. GOTR and Customer will have the relationship of independent contractors for all purposes. Each will have complete control over its own performance and the details for accomplishing its own obligations under this Agreement. In no event will the agents, representatives or employees of either be deemed to be agents, representatives or employees of the other. Each will be fully responsible for the payment of its own employees and compliance with all requirements and obligations relating to such employees under federal, state and local law (or foreign law, if applicable), including laws regarding minimum wages, social security, unemployment insurance, federal and state income taxes and workers' compensation insurance.

16. **ENTIRE AGREEMENT**. This Agreement, together with a SOW included in the form of an Attachment, is the entire agreement between the parties pertaining to the subject hereof, and all prior agreements, representations, negotiations and understandings of the parties, written or oral, express or implied, are superseded and merged herein, except any Non-Disclosure Agreement.

17. **COUNTERPARTS**. This Agreement may be executed (including by facsimile transmission or email in PDF format) in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

18. **MISCELLANEOUS**. This Agreement shall be binding upon all of the parties and their executors, administrators, representatives, permitted assigns and other successors. Any changes or modifications to the terms or responsibilities of either party must be approved by both parties in writing. This Agreement shall not be construed against the party who prepared it. The parties agree and express their intention that this Agreement shall not create a third party beneficiary right or otherwise inure to the benefit of a third party, who is not a party to the Agreement. Any waiver by any party shall not operate as a waiver of any other breach or provision of this Agreement.

49798872;1

**19. <u>COURT APPROVAL</u>.** Notwithstanding anything else contained herein, this agreement I subject to the approval of the Receivership Court.

**ACCEPTED AND AGREED:**

| Green Owl Tech Recycling: | CUSTOMER: |
|---|---|
| By: | By: |
| Name:  Brian Ouellette | Name: |
| Title: President/CEO | Title: |
| Date Signed:  8 \| 13 \| 20A | Date Signed: |

49798872;1

**ATTACHMENT A – STATEMENT OF WORK (SOW)**
**CLIENT: SIMPLE HEALTH PLANS**

This Statement of Work ("SOW") is entered into by the parties pursuant to the Services Agreement signed by the parties in July 2019 (the "SA"). All undefined capitalized terms shall have the meanings set forth in the SA.

**Purpose:**

This SOW outlines anticipated services and deliverables for a custom Information Technology Asset Disposition (ITAD) program developed, managed and run by GOTR for Customer's client identified as Simple Health Plans. The parties acknowledge that the Customer ITAD program is in its beginning stage, and that it may continue to change. Therefore, the parties agree to review this SOW over time and add additional SOWs to the Service Agreement as may become necessary.

**GOTR Responsibilities:**

- GOTR will consult with and guide Customer as they build an ITAD program that solves Customer's business needs.
- GOTR will coordinate all pickup and transportation logics at Customer's request and do so in a professional manner.
- GOTR professionals will use their industry experience to determine the disposition methods in the best interests of Customer.
- GOTR will use all resources available including its secured and alarmed warehouse, and its 24/7 video recorded secure cage to protect Customers data contained on loose hard disk drives (HDD) until directed further by Customer, or for a period of 24 months at which time GOTR and Customer will agree in writing to new terms for securing Customer's data.
- GOTR will not destroy or otherwise dispose of any hard drives or data contained therein without the Customer's prior written approval.

**Customer Responsibilities:**

- Customer will provide GOTR with a three (3) day notice when requiring a local pickup or local transport of equipment. A local pickup/transport is anywhere to/from Broward, Palm Beach or Miami-Dade Counties.
- Customer will communicate closely with GOTR between "pickups" or "transport" so GOTR can project remarketing demands and manage the remarketing of Customer's assets to the optimum benefit of both GOTR and Customer.

**Services:**

The following services ("SOW Services") are authorized under this SOW and will be provided on a consistent basis in accordance with the highest operating standards and policies in place by GOTR.

49798872;1

- *Detailed Asset Audit* – For each IT asset, GOTR will capture and report Make, Model, Serial Number, Key Functionality, Core Functionality, Cosmetic Notes, Cosmetic Grade, and Market Value.
- *Data Sanitization/Destruction* – For each data-bearing device, GOTR will sanitize and destroy the data in a process through which all identifying information and asset tags are removed from equipment.  GOTR sanitizes HDDs in accordance with NIST Special Publication 800-88, Rev. 1 – Standards for Media Sanitization. Notwithstanding this provision, GOTR shall not destroy or otherwise alter any data or any hard drive without Customer's prior written approval.
- *Equipment Repair* – For assets that do not pass Key Testing or Core Testing, GOTR IT Personnel will refurbish the asset to the R2 Compliance standard "Ready for Resale" or "Ready for Reuse."
- *Recycling* – Assets that fall below GOTR's current tech "cut line" or that do not pass Key Testing and it is determined to be too costly to refurbish are automatically sent for responsible recycling in accordance with GOTR's R2 processes and protocols.
- *Remarketing* – GOTR will employ several methods to resell IT assets identified for resale or reuse, and will select the best method while considering value reclamation, labor investment and time-to-sale.

## Deliverables

The following deliverables ("SOW Deliverables") are produced under this SOW and will be provided on a consistent basis in accordance with the highest operating standards and policies in place by GOTR.

- *Audit Report* – For each IT asset received, GOTR will provide to Customer within three (3) days a Basic Audit Report including Make, Model and Serial Number of the Asset.  Detailed Audit Information is added to this Information dynamically as the ITAD program continues.
- *Certificates* – GOTR will provide Certificates of Recycling if requested, and serialized Certificates of Destruction for each data-bearing device it receives under this SOW.
- *Settlement Report* – At the conclusion of all Remarketing Services under this SOW, GOTR will provide a Settlement Report detailing the disposition of IT Assets and the financial settlement therewith.

## Fees:

| | | |
|---|---|---|
| LCD Type TVs <75 lbs (broken) | Per Pound | $0.33 |
| LCD Type TVs >75 lbs (broken) | Per Unit | $0.00 |
| LCD Type Monitors (broken) | Per Pound | $0.33 |
| Computers/Laptops/Servers | Per Pound | $0.00 |
| Routers/Switches/Firewalls/Networking | Per Pound | $0.00 |
| Printers <22 lbs | Per Unit | $0.00 |
| Printers >22 lbs | Per Pound | $0.45 |
| Mixed E-Waste | Per Pound | $0.52 |
| Sorting Fee (if not sorted/palletized) | Per Pound | $0.10 |

49798872.1

| Sorted Pickup Fee | Per Pickup | $0.00 |
|---|---|---|
| Smartphone/Tablet Destruction | Per Unit | $10.00 |
| HDD/Data Wiping w/ C.O.D. | Per HDD | $3.00 |
| HDD/Data Destruction w/ C.O.D. | Per HDD | $5.00 |
| HDD Removal Labor | Per Unit | $0.00 |
| HDD Storage | Up to 24 Months | $0.00 |
| IT Labor Rate (Refurbishing Only) | Per Hour | $60.00 |

**Equipment Remarketing Revenue Sharing**

Customer and GOTR agree to share the revenue derived on all equipment remarketing sales managed by GOTR with 50% to the Customer and 50% to GOTR.  All equipment remarketing revenue sharing will be net of refurbishing costs which may include parts and labor where necessary, and disposition costs which include selling and shipping costs if incurred.  Customer incurred fees may be invoiced and paid by Customer or deducted from residual Remarketing Revenue Share due to Customer.

**Customer Locations:**

This SOW applies to the following Customer locations:

> Simple Health Plans
> 2 Oakwood Blvd
> Hollywood, FL 33020

**Contract Management:**

GOTR's primary Point-of-Contact (POC) for work performed under this SOW will be:

> Ike Teas
> ike@greenowltechrecycling.com
> 954-874-5454

**Customer's primary Point-of-Contact (POC) for work performed under this SOW will be:**

> Kimberly Smiley, Paralegal
> Kimberly.Smiley@akerman.com
> 954-759-8929

**Resources:**

49798872;1

All services to be performed at GOTR's secure Processing Facility located at 1621 SW 5th Court, Pompano Beach, FL 33069 OR any R2 certified processing facility located within the Continental United States while the work being performed through this SOW is performed under the supervision or at the direction of Authorized Personnel hereunder.

**Authorized Personnel:**

Personnel authorized to work under this SOW include the GOTR employees identified below:

| |
|---|
| GOTR, General Partner |
| Corporate Account Executive |
| Remarketing Manager |
| Warehouse Associate/Driver |
| IT Disposition Manager |

**Special Requirements:**

None

**Sales Tax:** All charges are subject to Florida State Sales Tax, as applicable.

**IN WITNESS WHEREOF,** the parties below hereto have executed duplicate originals of the Agreement as the Effective Date, but actually on the dates set forth below:

Customer: _____                GOTR

By: _____                By: _____

Printed: _____                Printed: Brian Ouellette

Title: _____                Title: President/CEO

Dated: _____                Dated: 8 | 13 | 2019

49798872;1

# **EXHIBIT B**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## CASE NO.: 18-cv-62593-DPG

FEDERAL TRADE COMMISSION,

      Plaintiff,

vs.

SIMPLE HEALTH PLANS, LLC, et al.,

      Defendants.

_____/

## ORDER GRANTING RECEIVER'S MOTION FOR AUTHORITY TO ENTER INTO INFORMATION TECHNOLOGY ASSET DISPOSITION SERVICES AGREEMENT WITH GREEN OWL TECH RECYCLING, INC.

THIS cause comes before the Court on the Receiver's Motion for Authority to Enter into Information Technology Asset Disposition Services Agreement with Green Owl Tech Recycling, (the "Motion") [ECF No. ___]. The Court, having reviewed the Motion and the responses thereto, if any, and being otherwise fully advised in the premises, it is hereby

**ORDERED and ADJUDGED** as follows:

1. The Motion is **GRANTED**.

2. The Receiver is authorized to enter into the Information Technology Asset Disposition Services Agreement with Green Owl Tech Recycling, pursuant to the terms set forth in the agreement, a copy of which is attached to the Motion as Exhibit "A".

**DONE AND ORDERED** in Chambers at Miami, Florida this ___ day of September 2019.

 

                                        _____

                                        DARRIN P. GAYLES
                                        UNITED STATES DISTRICT JUDGE