UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

FEDERAL TRADE COMMISSION,

        Plaintiff,

vs.

SIMPLE HEALTH PLANS LLC, a Florida limited
liability company, et al.,

        Defendants.

**Case No.: 18-cv-62593-DPG**

**PLAINTIFF'S OPPOSITION TO DEFENDANT
STEVEN DORFMAN'S MOTION TO EXTEND MONTHLY ALLOWANCE**

## I.    Introduction

Defendant Steve Dorfman ("Dorfman") ran a massive telemarketing scam that preyed on vulnerable consumers searching for health insurance.  In its Preliminary Injunction, the Court froze Dorfman's assets to safeguard a limited and dwindling pool of assets for the benefit of Dorfman's victims.  Having already received over $50,000 for his living expenses, Dorfman has now filed a third motion for the release of additional frozen funds.  Ignoring a clear directive from the Court, Dorfman's motion is wholly unsubstantiated by any showing that he has sought employment or exhausted other means of support.  Additionally, there remain unresolved questions related to Dorfman's control over foreign bank accounts that he has only recently acknowledged controlling, in direct contradiction of his prior sworn representations.  Against this backdrop and coupled with Dorfman's unwillingness to provide the FTC with even the most basic updated information regarding his financial status in compliance with the Court's orders, Dorfman seeks *indefinite* monthly payments of $5,000 with absolutely no showing that such

1

payments are reasonable or necessary.  The Court should deny such a request and preserve the remaining funds for Dorfman's consumer victims.

**II.     The Court Should Deny Dorfman's Motion**

    **A.  Dorfman is Not Entitled to Use the Frozen Funds for Living Expenses**

        **1.  Consumer Harm is Far Greater Than the Frozen Funds**

Courts have discretion to refuse to unfreeze assets to pay for living expenses.  *FTC v. IAB Mktg. Assocs.*, 972 F. Supp. 2d 1307, 1313 (S.D. Fla. 2013).  One purpose of the asset freeze is to ensure that funds are available to provide consumers redress and deprive wrongdoers of their ill-gotten gains.  *See id.*  When frozen assets amount to substantially less than the potential monetary liability, it is appropriate to maintain the asset freeze to preserve the assets for consumer redress.  *See id.* at 1314.  As the Court found in its Preliminary Injunction ruling, "[t]he vast disparity between Defendants' substantial ill-gotten gains and the value of the frozen assets supports maintaining the asset freeze."  DE 139 at 23.  Defendants received over $180 million in commissions alone from their unlawful practices (DE 139 at 22-23), while the Receivership Estate contained only approximately $10 million as of June 2019.  *See* 6/20/19 Hearing Tr., Attachment 1 at 8: 1-2.  This extreme disparity strongly supports a denial of Dorfman's request because, as the Court has recognized, any further release "means less money will be available for consumer redress."  DE 139 at 23.

        **2.  Dorfman Has Made No Showing That His Request for Living Expenses is Necessary and Reasonable**

If a court releases frozen funds for living expenses, the expenses must be limited to amounts that are both reasonable *and* necessary.  *CFTC v. Noble Metals*, 67 F.3d 766, 775, n.8

(9th Cir. 1995); *FTC v. H.N. Singer, Inc.*, 668 F.2d 1107, 1111-12 (9th Cir. 1982.)[1]  Dorfman has made no attempt to satisfy this standard, or to comply with the Court's explicit requirement that he make a sufficient showing in support of any further requests.

When the Court last considered this issue in June, Dorfman's counsel could not even answer the Court's basic question about whether Dorfman had attempted to seek employment in the almost eight months since the case's inception.  *See* 6/20/19 Hearing Tr., Attachment 1 at 4:18-21.  Although the Court allowed the release of frozen funds through October 31, 2019, the Court made clear to Dorfman that no further releases would be made absent a "sufficient showing."  6/20/19 Hearing Tr., Attachment 1 at 11:1-2.  Dorfman's counsel replied that he would "come back with Mr. Dorfman here in person or throughout (sic) a declaration" in support of any further request.  6/20/19 Hearing Tr., Attachment 1 at 11:1–2 and 10:18–20.  Completely ignoring the Court's directive, Mr. Dorfman now has returned to ask for more money with a grossly inadequate, bare bones Motion containing not a single piece of supporting evidence, not even the promised declaration from Dorfman.  Instead, the Motion contains only one sentence to justify the request—an unsupported assertion that Dorfman's "financial situation has not changed."  DE 214 at 2.

In the course of meeting and conferring about this Motion, the FTC requested specific information from Dorfman about his financial situation, including whether he or his wife is employed and what remains of the nearly $125,000 in cash his wife had on hand at the time this

---

[1] *See also, e.g., SEC v. Forte,* 598 F. Supp. 2d 689, 694 (E.D. Pa. 2009) (premium television services, cellular telephones, home phone, high-speed internet, and credit card debt are not "necessary" living expenses); *SEC v. Dobbins*, No. 3:04-cv-0605-H, 2004 WL 957715, at * 3 (N.D. Tex. April 14, 2004) (request for payment of cable television and automobile financing denied); *SEC v. Dowdell*, 175 F. Supp. 2d 850, 854 (W.D. Va. 2001) (court denied release of frozen funds to pay defendant's credit card bill); *SEC v. Coates*, No. 94 Civ. 5361 (KMW), 1994 WL 455558, *2 (S.D.N.Y. Aug. 23, 1994) (cable television is a luxury).

case was filed, which was left unfrozen.  Dorfman refused to provide the FTC any such

information.  *See* Attachment 2, 9/30/19 email correspondence.  The FTC's request was

reasonable, and in fact during the hearing on Dorfman's last motion seeking a release of frozen

funds to pay living expenses, the Court contemplated that Dorfman would provide the FTC such

information under these circumstances.  *See* 6/20/19 Hearing Tr., Attachment 1 at 11:1–3.

 Dorfman's Motion makes no mention of whether he has even attempted to find gainful

employment, which is reasonable to expect, and which the Court urged him to do.  *See* 6/20/19

Hearing Tr., Attachment 1 at 10:4–8 ("[T]here is no reason that he can't work.  I mean, there are

people actually convicted of serious crimes here in the Southern District and they seem to find

employment.  I don't think there is any reason that Mr. Dorfman can't as well."); s*ee also, e.g.,*

*IAB*, 972 F. Supp. 2d at 1314 ("Absent persuasive evidence to the contrary, the Court can

conclude only that [Defendants] are capable of working to support their basic necessities.").

Dorfman also makes no mention of whether his wife, who previously was employed as an

executive assistant by Defendants and paid a six figure salary, is employed.  The victims of

Dorfman's unlawful practices have to work for a living; there is no reason why Dorfman and his

wife should not have to do the same.  Dorfman's bare bones Motion also gives no indication

whether he has other sources of support or whether he has taken any steps to reduce his living

expenses, including by moving out of his luxury oceanfront condo.[2]

 Filing a motion that simply asserts Dorfman's "financial situation has not changed,"

without any evidentiary support, is plainly insufficient and also ignores the Court's clear

direction from the June hearing.  The motion should therefore be denied.

---

[2] As documented by the Federal Trade Commission, Dorfman siphoned millions of dollars of
proceeds from this scam to pay for his wedding, private jet travel, luxury sports cars, gambling
sprees, and the ocean-front condominium where he appears to still reside.

### B. Dorman Has Undislcosed Foreign Assets in Violation of the Preliminary Injunction

In addition to Dorfman's failure to make any showing to support his Motion, Dorfman continues to refuse to provide the FTC and the Receiver with complete and accurate information regarding foreign assets he controls, as required by the Preliminary Injunction. This, too, should foreclose the release of any more frozen assets for living expenses. The Preliminary Injunction requires Dorfman to identify and account for all of his assets and business interests, including those held in foreign countries.[3] It also requires him to repatriate foreign assets.[4] He has not done either. This issue was raised by the FTC during the June 20, 2019 hearing (6/20/19 Hearing Tr., Attachment 1 at 6:1-10), and despite numerous attempts, as described below and in the Receiver's Opposition (DE 219 at 4-6), Dorfman still has not complied.

Dorfman's sworn financial statement does not disclose a single interest in any foreign corporation or bank account. In fact, Dorfman specifically disclaimed any interest in foreign bank accounts in his sworn declaration submitted in opposition to the Preliminary Injunction. DE 104-1 at 19. The same declaration misleadingly suggests that the foreign companies that he actually controls are unrelated "service" companies to which the Defendants outsourced certain functions. (DE 104-1 at 19.) In spite of this, Dorfman's counsel represented to the Court during the June 20 hearing that "[f]rom the very inception of this case in the Court filings and financial statements we provided to the FTC, we indicated that there were companies that Mr. Dorfman had an interest in in Panama and the Dominican Republic that did business with the corporate defendants in this case that maintained a financial account." 6/20/19 Hearing, Attachment 1 at 7:8-20. This simply is not true. Dorfman has not disclosed *any* of the foreign businesses or

---

[3] DE 139 at 29 – 31 (Sections V (Financial Disclosures) and VI (Foreign Asset Repatriation)).
[4] Same.

accounts over which he has control, and he has not taken *any* steps to repatriate the money under his control in foreign accounts.

Dorfman's own business records make plain that Dorfman has undisclosed foreign accounts and business interests. As recently as January 2018, Dorfman reported to the Financial Crime Enforcement Network ("FinCEN"), in his individual capacity using his personal email address, five accounts that he "owned separately" at banks in Panama and the Dominican Republic.[5] Other business records show Dorfman's ownership interest in companies in each of those countries. Attachment 3 at 42-51 and Attachment 4.

Based on this information, the FTC served Dorfman with asset discovery seeking information about these foreign interests, but in his response, Dorfman did not acknowledge his interests in the foreign accounts or corporations. The FTC also sent a detailed follow up letter attaching the documentary evidence of Dorfman's interests and asking for information (Attachment 3). Dorfman ignored the letter. After asset discovery and the letter failed to yield results, the FTC threatened to file a contempt motion. Only then did Dorfman suddenly agree, on September 5, 2019, to work with the Receiver to identify foreign assets and repatriate them. However, six weeks later, Dorfman still has not brought himself into compliance. Dorfman's cooperation has been less than fulsome, as the Receiver detailed in his response to the instant motion (DE 219), but even the minimal cooperation he has provided uncovered foreign assets that he had not disclosed, including over $24,000 in a Dominican Republic account. Dorfman

---

[5] Dorfman filed Reports of Foreign Bank and Financial Accounts ("FBARs") for these accounts. Attachment 3 at 32-41. FBARs are required by FinCEN, a bureau of the U.S. Treasury, based on an individual obligation arising out of control over bank accounts with an aggregate value exceeding $10,000. Dorfman's FBARs are consistent with Dorfman's prior FinCEN submissions, which disclose as many as eight accounts under his control at the same banks in the same countries. Attachment 3 at 12-17.

has yet to take any steps to repatriate this money.  The full extent of Dorfman's foreign interests is yet unknown.

Dorfman's persistent refusal to provide information about his interest in foreign accounts and entities is a blatant violation of the Preliminary Injunction.  Absent full financial transparency and compliance with all of the Preliminary Injunction's requirements, Dorfman's Motion for the release of frozen funds for even more living expenses should not even be considered.  Indeed, the facts strongly support a finding that Dorfman has been in contempt of the Court's orders since the TRO was entered.

**III.    Conclusion**

In entering the Preliminary Injunction, the Court found that Dorfman and his companies engaged in deceptive business practices and that the FTC is likely to succeed on the merits of its claims against them.  The victims of Dorfman's deception suffered significant economic and other losses that in many cases continue to reverberate through their lives.  Yet, Dorfman has the audacity to ask the Court for relief from the asset freeze even though he has: (1) failed to comply with the Preliminary Injunction by disclosing and repatriating his assets located outside the U.S. and (2) made no attempt to show that a release of frozen funds is necessary and reasonable.  As the court held in *IAB*, "Equity favors the injured consumers over the Defendants who did the injuring and are now suffering the consequences of their conduct."  *IAB Mktg. Assocs.*, 972 F. Supp. 2d 1307, 1315.  The Motion should be denied.


Dated:  October 16, 2019            Respectfully submitted,
                                    ALDEN F. ABBOTT
                                    General Counsel

                                    /s/Elizabeth C. Scott
                                    ELIZABETH C. SCOTT, Special Bar No. A5501502

escott@ftc.gov; (312) 960-5609
JAMES H. DAVIS, Special Bar No. A5502004
jdavis@ftc.gov; (312) 960-5611
JOANNIE WEI, Special Bar No. A5502492
jwei@ftc.gov; (312) 960- 5607

Federal Trade Commission
230 S. Dearborn Street, Suite 3030
Chicago, Illinois  60604
Telephone:  (312) 960-5634
Facsimile: (312) 960-5600
Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on this October 16, 2019, by the Notice of Electronic Filing, and was electronically filed with the Court via the CM/ECF system, which generates a notice of filing to all counsel of record.

*/s/ Elizabeth C. Scott*
Elizabeth C. Scott (SBA # A5501502)
