# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

March 21, 2023



Clerk - Southern District of Florida
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

Appeal Number:  21-13116-GG
Case Style: Federal Trade Commission v. Steven Dorfman
District Court Docket No: 0:18-cv-62593-DPG

A copy of this letter, and the judgment form if noted above, but not a copy of the court's
decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision
was previously forwarded to counsel and pro se parties on the date it was issued.

The enclosed copy of the judgment is hereby issued as mandate of the court. The court's opinion
was previously provided on the date of issuance.

Clerk's Office Phone Numbers
General Information:          404-335-6100    Attorney Admissions: 404-335-6122
New / Before Briefing Cases:     404-335-6135    Capital Cases:          404-335-6200
Cases in Briefing / After Opinion: 404-335-6130    CM/ECF Help Desk:  404-335-6125
Cases Set for Oral Argument:     404-335-6141

Enclosure(s)

MDT-1 Letter Issuing Mandate

# In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————

No. 21-13116

————————————

FEDERAL TRADE COMMISSION,

Plaintiff-Appellee,

*versus*

SIMPLE HEALTH PLANS, LLC,

a Florida Limited Liability Company, et al.

Defendants,

STEVEN J. DORFMAN,

individually and as an officer, member or manager of Simple
Health Plans LLC, Health Benefits One LLC, Health Center
Management LLC, Innovative Customer Care LLC, Simple
Insurance LeadsLLC and Senior Benefits One LLC,

ISSUED AS MANDATE:  03/21/2023

2                                               21-13116

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:18-cv-62593-DPG

————————————————

JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion is-
sued on this date in this appeal is entered as the judgment of this
Court.

Entered: January 27, 2023

For the Court: David J. Smith, Clerk of Court

[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-13116

_____

FEDERAL TRADE COMMISSION,

Plaintiff-Appellee,

*versus*

SIMPLE HEALTH PLANS LLC,
a Florida Limited Liability Company, et al.,

Defendants,

STEVEN J. DORFMAN,
individually and as an officer, member or manager of Simple
Health Plans LLC, Health Benefits One LLC, Health Center
Management LLC, Innovative Customer Care LLC, Simple

Insurance Leads LLC, and Senior Benefits One LLC,

                                                    Defendant-Appellant.

———————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:18-cv-62593-DPG

———————————————

Before WILLIAM PRYOR, Chief Judge, JILL PRYOR, and GRANT,
Circuit Judges.

GRANT, Circuit Judge:

The Federal Trade Commission alleges that Steven J. Dorfman and his six companies engaged in unfair or deceptive business practices in violation of § 5(a) of the Federal Trade Commission Act and the Telemarketing Sales Rule. 15 U.S.C. § 45(a); 16 C.F.R. Part 310. Relying on its authority under § 13(b) of the FTC Act, the Commission obtained a preliminary injunction that included an asset freeze and the imposition of a receiver. Dorfman now argues that the preliminary injunction must be dissolved because a recent Supreme Court decision undermines the Commission's § 13(b) authority. *See AMG Cap. Mgmt., LLC v. FTC*, 141 S. Ct. 1341, 1344 (2021).

He is right that the decision limits the Commission's § 13(b) authority, but wrong about what that means here.   The Commission's updated complaint also invokes § 19 against Dorfman, and that provision authorizes the asset freeze and receivership.   We therefore affirm the order denying Dorfman's emergency motion to dissolve the preliminary injunction.

## I.

### A.

For over four years—starting in 2013 and continuing until the Commission began this action in October 2018—Dorfman and the companies under his control engaged in a "bait and switch" scheme to sell underinclusive health insurance plans to unwitting consumers.[1]   The technical term for these plans is "limited indemnity plans and medical discount memberships."   But as the district court put it, they are more like grocery store savers cards than health insurance.   They allow consumers to purchase medical services at pre-negotiated discount rates, but the consumer retains the risk of catastrophic medical bills.   And if that risk becomes a reality?   The plans are "practically worthless."

---

[1] Because Dorfman does not challenge the district court's findings of fact, we draw our recitation of the facts from the facts as they existed at the preliminary injunction stage.   The parties have engaged in substantial discovery since the preliminary injunction was entered, and at summary judgment specific facts may be different.   The facts recited here are for the purposes of this appeal only.

The Commission says that Dorfman led consumers to believe they were purchasing comprehensive insurance plans that would shift the risk of catastrophic bills to insurers and cover "a large portion of the expense for doctor's visits, emergency room visits, hospital stays, laboratory services, and prescription medicine." Dorfman's companies also wrongly assured consumers that the plans they purchased would allow them to avoid the Affordable Care Act's tax penalty for non-compliant plans.

The alleged misrepresentations did not end there. According to the Commission, the companies falsely represented that they were experts on, and providers of, government-sponsored health insurance policies. On their websites, they claimed—again, falsely—that they were affiliated with the AARP and the Blue Cross Blue Shield Association. The companies' lead generation tactics were also less than straightforward. For example, when consumers searched Google for "Obama Care Insurance" the top results included "obamacarequotes.org." This website—which was designed to give the impression that it offered comprehensive health insurance—prompted consumers to provide their contact information. A salesperson would then initiate contact, following a script that Dorfman himself "wrote, reviewed, and approved." Like the websites, these scripts contained misrepresentations designed to push consumers into Dorfman's inferior plans.

Only after payment was collected was it (sometimes) revealed to consumers that they had purchased limited benefit

plans.  At the end of their calls, consumers were transferred to a new salesperson to hear a series of densely worded and difficult-to-comprehend disclosures.  But before this "verification process," consumers were warned not to ask any questions and were told by their initial sales representative that only some of the information they were about to hear would apply to them—a caveat designed to suggest that anything inconsistent with the salesperson's earlier representations did not apply.  Verification scripts also varied depending on whether the call was being recorded.  If it was, the sales reps were directed to give honest answers to consumers' questions.  But if it was not, they were instructed to continue to mislead consumers into believing that they had purchased comprehensive health insurance.

The Commission alleges that these sales were as profitable as they were dishonest: Dorfman and his companies received over $180 million in commissions from the plans.  Their customers, meanwhile, were stuck with surprise medical bills.  In one example cited by the district court, a consumer was led to believe that his copays would be limited to $50 and his out-of-pocket expenses capped at $2,000.  But by the time he passed away (about four months after purchasing his plan) he had incurred around $300,000 in uncovered medical bills.  This was only one example—extensive evidence detailed other injuries Dorfman's scheme inflicted on consumers.

## B.

In October 2018, the Commission filed a complaint against Dorfman and six companies he owned and controlled.[2]  The complaint alleged violations of § 5(a) of the FTC Act, which broadly prohibits "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a).[3]  It also alleged violations of the Telemarketing Sales Rule, which prohibits sellers and telemarketers from misrepresenting, whether directly or by implication, any "material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of a sales offer." 16 C.F.R. § 310.3(a)(2)(iii).  In addition, the rule bars sellers and telemarketers from misrepresenting, whether directly or by implication, a "seller's or telemarketer's affiliation with, or endorsement or sponsorship by, any person or government entity." *Id.* § 310.3(a)(2)(vii).  And it prohibits sellers and telemarketers from making false or misleading statements to induce a person to pay for goods or services.  *Id.* § 310.3(a)(4).

Immediately after suing, the Commission obtained an ex parte temporary restraining order.  Among other things, the order

---

[2] Dorfman's companies are Simple Health Plans LLC, Health Benefits One LLC, Health Center Management LLC, Innovative Customer Care LLC, Simple Insurance Leads LLC, and Senior Benefits One LLC.

[3] Throughout this opinion, we refer to the provisions of the FTC Act as it was enacted.  For clarity, we note that § 5(a) of the FTC Act is codified at 15 U.S.C. § 45(a); § 13(b) is codified at 15 U.S.C. § 53(b); and § 19 is codified at 15 U.S.C. § 57b.

froze the companies' assets and imposed a temporary receivership. It also prohibited Dorfman and his companies from continuing to make material misrepresentations and from disclosing or using customer information.

Dorfman consented multiple times to an extension of the order, but he eventually moved to strike it. The district court denied his motion, and when he appealed to this Court we dismissed for lack of jurisdiction. *FTC v. Simple Health Plans, LLC*, No. 19-10840 (11th Cir. Apr. 16, 2019).

The district court later granted a preliminary injunction continuing the measures imposed by the temporary restraining order, including the asset freeze and receivership. The court found that the Commission was likely to succeed on the merits of both the § 5(a) claim and the Telemarketing Sales Rule claim. The authority to issue the injunction was grounded exclusively in § 13(b) of the FTC Act—a provision that, at that time, was broadly thought to authorize the Commission to seek monetary awards for consumer redress whenever it had reason to believe that any law it enforced was being violated. *See* 15 U.S.C. § 53(b).

Dorfman directly appealed the order granting the preliminary injunction on grounds not relevant here. *FTC v. Simple Health Plans, LLC*, 801 F. App'x 685, 687 (11th Cir. 2020) (unpublished). We held that our then-binding precedent compelled us to affirm. *Id.* at 688. With that appeal still pending, Dorfman filed his first motion to dissolve the preliminary injunction, again on grounds not relevant here. The district court

denied that motion.  On appeal, we again held that then-binding precedent compelled us to affirm the district court.  *FTC v. Simple Health Plans, LLC*, 792 F. App'x 761, 762 (11th Cir. 2020) (unpublished).

The Commission filed its first amended complaint in November 2019, a little more than a year after its original filing. Besides adding a new defendant, the Commission added one more basis for relief—§ 19 of the FTC Act.  The district court dismissed parts of the amended § 5(a) claim for failure to allege sufficient facts detailing the individual involvement of Dorfman and the other defendant.  Shortly after that dismissal, the Commission remedied this deficiency in the now-operative Second Amended Complaint.

In 2021, three years into this litigation, the Supreme Court narrowed the relief available under § 13(b) of the FTC Act— monetary awards are no longer an option under that provision. *AMG Cap. Mgmt.*, 141 S. Ct. at 1344.  Dorfman immediately filed an emergency motion to dissolve the preliminary injunction, arguing that because § 13(b) could no longer support claims for monetary relief, the preliminary injunction freezing his assets and imposing a receivership was unlawful.

The district court denied his motion, but not in reliance on § 13(b).  It instead grounded its authority to issue the preliminary injunction in § 19 of the FTC Act.  Dorfman now appeals, and we affirm.

## II.

We review a district court's denial of a motion to dissolve a preliminary injunction for abuse of discretion. *Jones v. Governor of Florida*, 950 F.3d 795, 806 (11th Cir. 2020). Findings of fact are reviewed for clear error and questions of law are reviewed de novo. *Id.*

## III.

## A.

Section 13(b) of the FTC Act authorizes the district court to issue a "permanent injunction." 15 U.S.C. § 53(b). Many courts, including this one, long interpreted that language to invoke the full scope of the district courts' equitable powers. *See, e.g., FTC v. U.S. Oil & Gas Corp.*, 748 F.2d 1431, 1432–34 (11th Cir. 1984); *AMG Cap. Mgmt.*, 141 S. Ct. at 1346–47. This included the power to grant monetary awards such as restitution and disgorgement (or so-called "equitable monetary relief"). *AMG Cap. Mgmt.*, 141 S. Ct. at 1346–47. Using that authority, the Commission routinely obtained monetary awards from defendants who violated various consumer protection and antitrust laws. *See id.* But in *AMG Capital*, the Supreme Court changed that understanding—it held that the text and structure of the FTC Act limit the meaning of the term "permanent injunction" to forward-looking *injunctive* relief, rather than retrospective monetary measures. *Id.* at 1347–48. Injunctive relief, the Court clarified, "typically offers prospective

relief against ongoing or future harm." *Id.* at 1347 (citing *United States v. Oregon State Med. Soc.*, 343 U.S. 326, 333 (1952)).

We agree with Dorfman that after *AMG Capital* the Commission cannot rely solely on § 13(b) to support the preliminary injunction here because it includes measures preserving assets for monetary relief. Now that "monetary relief is no longer available" under § 13(b), "there is no need to preserve resources for a future judgment." *FTC v. On Point Cap. Partners LLC*, 17 F.4th 1066, 1078 (11th Cir. 2021). The "imposition of an asset freeze or receivership" is thus inappropriate when premised solely on § 13(b). *Id.*

But the injunction here is not premised solely on § 13(b); the Commission also points to § 19, the FTC Act's consumer redress provision. That provision authorizes the district court to grant "such relief as the court finds necessary to redress injury to consumers." 15 U.S.C. § 57b(b). Unlike § 13(b), which applies to violations of "any provision of law enforced by the Federal Trade Commission," *id.* § 53(b), § 19 authorizes the Commission to commence a civil action only if the defendant violates a "rule under this subchapter respecting unfair or deceptive acts or practices" or if the Commission obtains a final cease-and-desist order respecting an unfair or deceptive act or practice, *id.* § 57b(a)(1)–(2).[4]

---

[4] Certain additional limitations apply when the Commission is seeking relief after obtaining a final cease and desist order. *See* 15 U.S.C. § 57b(a)(2). But it is undisputed that the Commission has not obtained a cease-and-desist order.

Section 19 thus "comes with certain important limitations that are absent in § 13(b)." *AMG Cap. Mgmt.*, 141 S. Ct. at 1349. But its potential remedies are broader, or at least different. Section 13(b), as we have said, allows for prospective injunctive relief. 15 U.S.C. § 53(b). Section 19, on the other hand, allows for relief "necessary to redress injury to consumers." *Id.* § 57b(b).

This case, then, presents two questions. First, does § 19 apply to the Telemarketing Sales Rule? And second, if so, does it authorize the preliminary measures Dorfman challenges?

On the first question, Dorfman argues that § 19 does not cover his alleged violation of the Telemarketing Sales Rule because that rule falls within a different subchapter than § 19. And § 19 is explicitly limited to the violation of a "rule under this subchapter"—that is, subchapter 1 of Title 15, Chapter 2. *Id.* § 57b(a)(1). In short, Dorfman says, the Telemarketing Sales Rule was promulgated under the Telemarketing Act, which is not found in the same subchapter as § 19.

True enough, but this analysis is incomplete. A more thorough review shows that rules prescribed under the Telemarketing Act—including the Telemarketing Sales Rule at issue here—*are* enforceable under § 19. *See FTC v. Wash. Data Res., Inc.*, 704 F.3d 1323, 1326 (11th Cir. 2013). The Act states that a violation of one of its rules "shall be treated as a violation of a rule under section 57a of this title regarding unfair or deceptive acts or practices." 15 U.S.C. § 6102(c)(1). And § 57a *is* in subchapter 1 of Title 15, Chapter 2. *See id.* § 57a.

The statutes at large make the point even more straightforward.[5]  As enacted by Congress, the Telemarketing Act states that "[a]ny violation of any rule" prescribed under the Act "shall be treated as a violation of a rule under section 18 of the Federal Trade Commission Act (15 U.S.C. 57a) regarding unfair or deceptive acts or practices."  Telemarketing and Consumer Fraud and Abuse Prevention Act, Pub. L. 103-297, § 3(c), 108 Stat. 1545, 1546 (1994).  So—for purposes of triggering § 19—by expressly identifying the FTC Act, Congress has unambiguously commanded us to treat the Telemarketing Sales Rule as a rule enforceable under § 19.

Still, the question remains whether § 19 authorizes the specific asset freeze and receivership imposed against Dorfman and his companies.  Section 19(b) provides the district court jurisdiction to grant "such relief as the court finds necessary to redress injury to consumers," which "may include, but shall not be limited to, rescission or reformation of contracts, the refund of money or return of property, the payment of damages, and public notification."  15 U.S.C. § 57b(b).  Consistent with the requirement that the relief be necessary to redress injury to consumers, the district court cannot impose "any exemplary or punitive damages." *Id.*

---

[5] Although the U.S. Code is prima facie evidence of the law, the statutes at large represent the ultimate authority on what the law is.  *In re Bayou Shores SNF, LLC*, 828 F.3d 1297, 1306 n.13 (11th Cir. 2016).

The Commission seeks rescission or reformation of contracts and the refund of money—forms of relief expressly authorized by § 19(b).[6]  *Id.*  And though the statute does not explicitly authorize preliminary measures of relief, like the asset freeze and receivership sought here, it does give the district courts broad authority to grant remedies that are "necessary to redress injury to consumers."  *Id.*  It also specifies that relief "shall not be limited to" the enumerated measures.  *Id.*  That language renders the list nonexhaustive "[b]y its own terms," so the omission of preliminary measures does not mean they are not authorized.  *Talk Am., Inc. v. Mich. Bell Tel. Co.*, 564 U.S. 50, 63 n.5 (2011).  Instead, the question is whether they are "necessary to redress injury to consumers."  15 U.S.C. § 57b(b).

Asset freeze and receivership are forms of relief that can be, and often are, "necessary to redress injury to consumers."  *Id.*  Our law has long recognized the need for the appointment of a receiver in appropriate cases to "preserve and protect" property at issue

---

[6] The Commission's Second Amended Complaint seeks "rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies."  The Commission clarified in a July 5, 2022 letter—and again at oral argument—that it will not seek disgorgement to the Treasury.  So for purposes of this appeal, we accept that any requested relief will be used for consumer redress and attendant expenses.  *Cf. FTC v. Figgie Int'l, Inc.*, 994 F.2d 595, 607 (9th Cir. 1993).  We emphasize, however, that the exact contours of the relief ultimately granted are not before us in this appeal; we look to the final relief sought only to the extent necessary to assess whether the asset freeze and receivership are allowed.

pending its final disposition.  *See, e.g.*, *Gordon v. Washington*, 295 U.S. 30, 37 (1935).  And we have considered a "temporary freeze of defendant's assets" to be "reasonably necessary to assure that the court's jurisdiction would not be defeated by the defendant's disposition of assets in the event the court should ultimately order disgorgement of the allegedly misappropriated funds." *CFTC v. Muller*, 570 F.2d 1296, 1301 (5th Cir. 1978).[7]  In other words, the point is to ensure that if the court awards final monetary relief, assets will still be available to redress consumers' injuries. Otherwise, the district court would be unable to provide any meaningful relief.

All that to say, if preliminary measures like an asset freeze or a receivership are necessary to preserve funds for a future monetary judgment, they are authorized by § 19(b).  Here, the district court found just that: "a preliminary injunction and asset freeze are necessary to protect consumers, protect assets for consumer redress, and preserve the status quo."  Dorfman does not challenge that conclusion.  We therefore affirm the portions of the preliminary injunction imposing the asset freeze and receivership.

## B.

Dorfman also seeks to vacate the parts of the injunction prohibiting future misrepresentations and the use or disclosure of

---

[7] This Court adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981, in *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

customer information.  But Dorfman does not make an argument that this is compelled by *AMG Capital*, and that argument would misunderstand the extent of *AMG Capital*'s holding in any event. As we have already explained, when the Commission enforces § 5(a), "[p]rospective injunctive relief is still allowed" after *AMG Capital.  On Point Cap.*, 17 F.4th at 1079 (citing *AMG Cap. Mgmt.*, 141 S. Ct. at 1347–48).  So injunctive relief relating to *actions* is still allowed under § 13(b), while injunctive relief relating to *money* is not.  Accordingly, we affirm the district court's order with respect to the portions of the preliminary injunction enjoining future misrepresentations and the disclosure or use of customer information.

## IV.

Dorfman raises several other issues, but they are either outside the scope of this appeal or have been abandoned.  Because this appeal comes to us on a second successive motion to dissolve the preliminary injunction, our review is limited to whether *AMG Capital* requires dissolution or modification of the preliminary injunction order.  *See Birmingham Fire Fighters Ass'n 117 v. Jefferson Cnty.*, 290 F.3d 1250, 1254 (11th Cir. 2002) (an appeal "should be permitted only to the extent necessary to consider whether the changed circumstances, evidence, or law requires modification of the order which is presumed to have been correct when issued").  Dorfman's arguments on due process and the likelihood of success on the merits are unrelated to *AMG Capital* and therefore outside the scope of this appeal; he should have

brought them in his initial appeal of the preliminary injunction. And his arguments about the final form of relief, including whether the Commission will obtain punitive relief, are premature at this stage.

Finally, Dorfman abandoned any argument that the Commission was required to renew its motion for a preliminary injunction after filing its Second Amended Complaint. Though he raises this issue in the introduction of his opening brief, he does not otherwise develop the argument in his briefs. "We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014); *see also Cote v. Philip Morris USA, Inc.*, 985 F.3d 840, 846 (11th Cir. 2021) (a party abandons an issue when it is raised only in the introduction of a brief); *United States v. Mathis*, 767 F.3d 1264, 1275 n.2 (11th Cir. 2014) (appellant cannot resurrect an abandoned issue by raising it at oral argument).

\*      \*      \*

Dorfman urges us to read *AMG Capital* as a signal to interpret the FTC Act with a view to "reigning in the FTC's power." But we take a different lesson. *AMG Capital* teaches us to read the FTC Act to "mean what it says." 141 S. Ct. at 1349. In *AMG Capital*, that meant limiting § 13(b)'s provision for a "permanent injunction" to injunctive relief. *Id.* Here, that means recognizing the broad scope of relief available under § 19. When

21-13116                 Opinion of the Court                 17

the Commission enforces a rule, § 19 grants the district court jurisdiction to offer relief "necessary to redress injury to consumers."   15 U.S.C. § 57b(a)–(b).   To preserve funds for consumers, the Commission sought to freeze Dorfman's assets and impose a receivership over his companies.   Because § 19 allows such relief here, we **AFFIRM**.

**UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

January 27, 2023

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  21-13116-GG
Case Style:  Federal Trade Commission v. Steven Dorfman
District Court Docket No:  0:18-cv-62593-DPG

Electronic Filing
All counsel must file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Although not required, non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing are available on the Court's website.

Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, <u>costs taxed against the appellant</u>.

Please use the most recent version of the Bill of Costs form available on the court's website at
<u>www.ca11.uscourts.gov.</u>

<u>Clerk's Office Phone Numbers</u>
| | |
|---|---|
| General Information | 404-335-6100 |
| New / Before Briefing Cases | 404-335-6135 |
| Cases in Briefing / After Opinion | 404-335-6130 |
| Cases Set for Oral Argument | 404-335-6141 |
| Capital Cases | 404-335-6200 |
| Attorney Admissions | 404-335-6122 |
| CM/ECF Help Desk | 404-335-6125 |

OPIN-1A Issuance of Opinion With Costs